IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRYNNE SOUKUP, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 1:20-cv-648 |
| FRONTIER AIRLINES, INC., | § § § | |
| *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, BRYNNE SOUKUP, by and through her counsel, hereby files this Complaint against Defendant, FRONTIER AIRLINES, INC. ("Frontier"), for willful violations of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE §§ 21.051 and 21.055. In support of her causes of action, Plaintiff states the following:

**I.**
**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, BRYNNE SOUKUP, is an individual residing in Houston, Texas.

2. Defendant, FRONTIER AIRLINES, INC., is a corporate entity formed and existing under the laws of the State of Colorado, where it also operates its corporate headquarters.

3. Defendant, at all relevant times, operated an international commercial airline terminal located in this judicial district, continuously conducted business in this judicial district, contracted to do business in this judicial district, and directly employed residents of this judicial district for employment herein.

4. The events at issue in this Complaint occurred while Plaintiff worked with and for Defendant primarily from her former residence located in Austin, Texas.

5. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 USC § 1332(a).

6. Plaintiff exhausted her administrative remedies under the TCHRA by timely filing a Charge of Discrimination with the Texas Workforce Commission, and by filing this suit within the time limits under relevant law.

7. Venue is proper in this judicial district and division under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## II.
## FACTUAL BACKGROUND

8. Plaintiff is a tenured veteran of the aviation industry with over two decades of successful experience related to the administration and management of commercial airports and airlines.

9. Plaintiff is a transgender woman, and transitioned from her assigned male sex to align with her female gender identity prior to the events described herein.

10. In September 2017, Plaintiff began working as a General Manager for Flight Services & Systems, LLC ("FSS"), a staffing and ground services provider for commercial airlines.

11. On February 16, 2018, FSS promoted Plaintiff to Regional Director of Operations.

12. Both Defendant and FSS jointly exercised significant control over the details and means by which Plaintiff performed her work. For instance, although FSS hired Plaintiff and paid her wages throughout her employment, Plaintiff received extensive training from Defendant and was expected to conduct business for and on behalf of Defendant in accordance with its policies and procedures. Plaintiff worked in close association with, and often at the direction of, Defendant

and its employees. On-the-job corrections and admonishments were delivered by Defendant's employees to FSS employees. Defendant's employees had the right to terminate and end the assignment of specific FSS workers. Ultimately, Defendant's employees had the right to control FSS employees.

13. FSS further admitted that Defendant's employees interacted with and supervised FSS's employees servicing Frontier flights.

14. Because Defendant was among FSS's largest and most influential clients, Plaintiff was largely economically-dependent upon the business of Defendant.

15. In late-2018/early-2019, Plaintiff's subordinates reported several incidents of harassing and derogatory behavior by Defendant's Regional Manager concerning Plaintiff and Plaintiff's gender identity. For instance, one subordinate reported that the Regional Manager unjustifiably derided Plaintiff's job performance and remarked that Plaintiff was a "he-she" and a "waste of space." In a separate incident, a different subordinate reported that the Regional Manager again derided Plaintiff's job performance and arbitrarily outed her as transgender to the subordinate, stating, "You know [Plaintiff] is transgender, right?"

16. In January 2019, Plaintiff complained to FSS's leadership and Defendant's Human Resources Department about the Regional Manager's derogatory harassment.

17. On February 6, 2019, Defendant's Human Resources Business Partner claimed that Defendant had concluded a "complete and thorough investigation", but refused to identify any remedial actions taken by Defendant to address Plaintiff's complaint.

18. Defendant's Human Resources Department did not contact Plaintiff to obtain additional information about Plaintiff's complaints.

19. Upon information and belief, Defendant's Human Resources Department did not contact Plaintiff's subordinates to obtain additional information about Plaintiff's complaints.

20. Upon information and belief, Defendant still employs the Regional Manager who referred to Plaintiff as a "he-she" and a "waste of space."

21. On February 25, 2019, Plaintiff learned she was being demoted, transferred to a location 500 miles away from her home in Austin, Texas, and placed on a 90-day "probationary period", during which if Plaintiff failed to meet certain undefined "performance standards and expectations", her employment would be terminated.

22. Plaintiff's job performance throughout her tenure with FSS and Defendant was stellar, and she had no disciplinary history.

23. After Plaintiff refused to accept the unjustified demotion, transfer, and probation, her employment was terminated.

## III.
## CAUSES OF ACTION

### Count 1: Gender Identity Discrimination under TEX. LAB. CODE § 21.051

24. Plaintiff incorporates paragraphs 1-22, *supra*, as if repeated verbatim herein.

25. This action is brought pursuant to TEX. LAB. CODE § 21.051, part of the TCHRA.

26. "The law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). "Courts analyze Title VII and parallel claims under the Texas Labor Code identically. Because TCHRA is intended to correlate with Title VII, the same analysis is applied for each claim." *Cornett v. United Airlines, Inc.*, No. A-18-CV-698 LY, 2019 WL 453365, at *3 (W.D. Tex. Feb. 5, 2019) (*citing Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x. 295, 297 (5th Cir.), *cert. denied*, 571 U.S. 880 (2013); *Shackleford* at 404) (internal quotations omitted).

27. Both the TCHRA and Title VII prohibit discrimination by employers on the basis of sex. § 21.051; 42 U.S.C. § 2000e-2.

28. Plaintiff, a transgender woman, belongs to a protected class under Title VII, and accordingly, the TCHRA. § 2000e-2; *Bostock v. Clayton County, Georgia*, No. 17-1618, 2020 WL 3146686 (U.S. June 15, 2020).

29. Defendant is an employer within the meaning of the TCHRA and functioned as a joint employer of Plaintiff with FSS.

30. Defendant discriminated against Plaintiff in connection with the terms, conditions, and privileges of her employment by, *inter alia*, terminating or causing the termination of Plaintiff's employment because of her transgender status; and perpetuating a severe and pervasive hostile work environment toward Plaintiff because of her transgender status.

31. Defendant engaged in this unlawful intentional employment practice with malice or reckless indifference to Plaintiff's rights under the TCHRA.

32. The unlawful practices committed by Defendant directly caused Plaintiff's economic and noneconomic harm, as set forth below.

## Count 2: Retaliation Under TEX. LAB. CODE § 21.055

33. Plaintiff incorporates paragraphs 1-22, *supra*, as if repeated verbatim herein.

34. Plaintiff engaged in protected activity under the TCHRA by opposing an unlawful discriminatory practice.

35. Plaintiff engaged in this protected activity in good faith.

36. Defendant took adverse employment actions against Plaintiff after she engaged in this protected activity.

37. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions including, *inter alia*, her demotion, transfer, probation, and eventual termination.

38. Defendant engaged in this unlawful intentional employment practice with malice or reckless indifference to Plaintiff's rights under the TCHRA.

39. Defendant's unlawful retaliation caused Plaintiff's economic and non-economic harm, as set forth below.

## IV.
## DAMAGES

40. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic damages, including past and future lost income, interest on back and front pay, lost earning capacity in the past and future, lost benefits under the contract or employment relationship, job search expenses, and other financial damages.

41. Plaintiff has also incurred non-economic damages as a result of Defendant's unlawful conduct, including emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

42. Defendant intentionally engaged in unlawful employment practices by discriminating and retaliating against Plaintiff with malice or reckless indifference to Plaintiff's rights under the TCHRA.

43. Defendant's conduct calls for the imposition of compensatory and punitive damages under TEX. LAB. CODE § 21.2585 in an amount sufficient to deter Defendant from engaging in such acts of retaliation in the future.

## V.
## ATTORNEY'S FEES

44. A prevailing party may recover reasonable attorneys' and experts' fees under Tex. Lab. Code § 21.259.

45. Plaintiff seeks all reasonable and necessary attorneys' fees and expert witness fees in this case from Defendant.

46. Plaintiff additionally seeks recovery of all costs associated with the prosecution of this action.

## VI.
## JURY DEMAND

47. Plaintiff demands a trial by jury of all the issues and facts in this case.

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

48. The Court assume jurisdiction of this cause and that Defendant be cited to appear;

49. The Court award Plaintiff economic, compensatory, and punitive damages as specified above;

50. The Court award all reasonable and necessary attorneys' fees and expert witness fees in this case;

51. The Court award Plaintiff the equitable remedy of reinstatement or, in the alternative, front pay;

52. The Court award Plaintiff pre- and post-judgement interest at the highest rate allowable; and

53. The Court award Plaintiff any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

**ROSS • SCALISE LAW GROUP**
1104 San Antonio Street
Austin, Texas 78701
T: (512) 474-7677
F: (512) 474-5306

*/s/ Daniel B. Ross*
**Daniel B. Ross**
State Bar No. 00789810
dan@rosslawgroup.com
**Trenton Lacy**
State Bar No. 24106176
trenton@rosslawgroup.com

**ATTORNEYS FOR PLAINTIFF**