IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BRYNNE SOUKUP,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | Civil Action No. 1:20-CV-648-RP |
| § | |
| **FRONTIER AIRLINES, INC. AND** § | |
| **FLIGHT SERVICES & SYSTEMS, LLC,** § | |
| § | |
| *Defendants*. § | |

**DEFENDANT FRONTIER AIRLINES, INC.'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant Frontier Airlines, Inc. ("Frontier"), files this Motion to Dismiss Plaintiff Brynne Soukup's ("Plaintiff") First Amended Complaint ("Complaint")[1] under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of this Motion, Frontier states as follows:

**I.
INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff asserts claims of gender identity discrimination and retaliation against Frontier, and Defendant Flight Services and Systems, LLC ("FSS"), under Chapter 21 of the Texas Labor Code. In addition, Plaintiff asserts claims of gender identity discrimination and retaliation against FSS under Title VII. Plaintiff's claims stem from allegations that she is a transgender woman, and that she was subject to "several incidents of harassing and derogatory behavior" by Frontier's Regional Manager, and her eventual termination of employment after her complaints about this alleged conduct to Frontier and FSS.[2] Plaintiff alleges that Frontier and FSS are joint employers,

---

[1] ECF No. 7.
[2] ECF No. 7, ¶¶ 15-23.

**DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS
AND BRIEF IN SUPPORT**                                                      Page 1

and that this conduct constitutes discrimination and retaliation in violation of the Texas Labor Code and Title VII.

As set forth below, Plaintiff's claims against Frontier are insufficient as a matter of law, and the Court should dismiss such claims against Frontier.

## II.
## SUMMARY OF FACTUAL ALLEGATIONS[3]

Plaintiff alleges that:

- She was a General Manager for *FSS*, before *FSS* promoted her to Regional Director for Operations.[4]

- *FSS* hired Plaintiff, and paid her wages throughout her employment;[5]

- Plaintiff received training from, and was expected to follow the policies and procedures of, both FSS and Frontier;[6]

- Plaintiff worked in close association with Frontier;[7]

- Frontier's employees had the right to terminate and end the assignment of specific FSS workers;[8] and

- Plaintiff was economically dependent upon Frontier's business.[9]

Over the course of late 2018, and in early 2019, Plaintiff alleges that her subordinates reported incidents involving harassing and derogatory behavior by Frontier's Regional Manager concerning Plaintiff's gender identity. Plaintiff states that she complained to FSS and to Frontier

---

[3] The factual allegations set forth herein are taken from the Complaint, and are presumed to be true solely for purposes of this motion. Frontier denies some of these allegations and reserves the right to challenge these allegations during the course of this case.
[4] ECF No. 7, ¶¶ 10-11.
[5] *Id.* at ¶ 12.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 14.

about this conduct in January 2019. Frontier then investigated Plaintiff's complaints.[10]

On February 25, 2019, Plaintiff learned that she was being "demoted, transferred . . . and placed on a 90-day 'probationary period.'"[11] After refusing to accept this change, Plaintiff's employment was terminated.[12]

Plaintiff filed suit against Frontier under the above-referenced causes of action, and thereafter amended her Complaint to add FSS as a defendant.[13] As a prerequisite to filing this lawsuit, Plaintiff filed an EEOC Charge in April 2019, in which she made the following statement under penalty of perjury: "**FSS was requiring me** to accept a transfer to New Orleans, LA. Per a correspondence dated February 25, 2019 from [a Human Resources Manager for FSS] I had until March 10, 2019 (13 days) to agree to the transfer or else I would be terminated."[14] By comparison, Plaintiff's Amended Complaint does not include this key allegation.[15]

## III. 
## ARGUMENT

### A. Standard for dismissal under FED. R. CIV. P. 12(b)(6)

The Court is familiar with this Motion's review standard:

> Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide

---

[10] *Id.* at ¶ 17.
[11] *Id.* at ¶ 21.
[12] *Id.* at ¶ 23.
[13] *See generally, Id.*
[14] *See* Gray Decl., Exhibit A, (Plaintiff's Charge of Discrimination filed with the EEOC) (emphasis added). In considering a motion to dismiss, a court may consider an EEOC Charge, as it is central to a plaintiff's claims. *See Wellington v. Tex. Guaranteed*, No. A-13-CA-077-SS, 2014 U.S. Dist. LEXIS 69208, at *7-8 (W.D. Tex. May 20, 2014); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").
[15] *See* ECF No. 7, ¶ 23 (merely stating that "her employment was terminated").

> the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).
>
> A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338.

*Teague v. Williamson Cty.*, No. 1:18-CV-1098-RP, 2020 U.S. Dist. LEXIS 87695 (W.D. Tex. May 19, 2020) (motion to dismiss was granted-in-part and denied-in-part).

### B. Plaintiff failed to plead facts to show that Frontier was her employer[16]

As a threshold matter, Plaintiff has not, nor can she establish that she had an employment relationship with Frontier. Determining whether Frontier is an "employer" under the Texas Labor Code involves a two-step process. *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). First, Frontier must fall within the statutory definition of an "employer." *Id.* Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees . . ., and any agent of such a person . . . ." 42 U.S.C.

---

[16] Plaintiff states in her Complaint, and Frontier does not dispute, that the law governing claims under Chapter 21 of the Texas Labor Code and Title VII is identical. Thus, to the extent authority is applicable to an analysis under Title VII, it likewise applies to Plaintiff's claims under the Texas Labor Code.

**DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS**
**AND BRIEF IN SUPPORT**                                                                                           **Page 4**

§ 2000e(b). Frontier does not dispute at this time that it falls within this definition.

Second, an employment relationship must exist between Frontier and Plaintiff. *Muhammad*, 479 F.3d at 380. To determine whether an employment relationship exists within the meaning of Title VII and the Texas Labor Code, the Fifth Circuit applies a "hybrid economic realities/common law control test." *Id.* The most important component of this test is "the right to control the employee's conduct." *Id.* (alterations omitted). When examining the control component, the Fifth Circuit focuses on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. *Id.* The economic realities component of the test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. *Id.*

Here, despite her attempts to do so, Plaintiff has not pleaded facts sufficient to show that Frontier exhibited *any* of the relevant indicia of an employment relationship. Indeed, courts have repeatedly determined that entities like Frontier are not employers, under similar circumstances. First, Plaintiff is clear in her allegations that *FSS* hired her, and *FSS* promoted her to Regional Director of Operations.[17] Plaintiff further admits that *FSS*, not Frontier, required her to accept a transfer, or else face termination of her employment.[18] While Plaintiff alleges that she worked "close" with, and "often" at the direction of Frontier employees, such allegations do not establish control over an employee when the ultimate authority to hire, fire, or promote lies elsewhere. *See Reith v. TXU Corp.*, No. 4:05-CV-33, 2006 U.S. Dist. LEXIS 16813 (E.D. Tex. Apr. 4, 2006) (dismissing claims against putative joint employer, and holding that "[w]hile TXU had some control over setting Plaintiff's schedule and supervising him," the co-defendant had actual

---

[17] ECF No. 7, ¶¶ 10-12.
[18] *See* Gray Decl., Ex. A ("FSS was requiring me to accept a transfer to New Orleans, LA. Per a correspondence dated February 25, 2019 from [a Human Resources Manager for FSS] I had until March 10, 2019 (13 days) to agree to the transfer or else I would be terminated.").

authority to fire or transfer him). What is more, Plaintiff cannot establish, nor does she allege, that Frontier set her work schedule, maintained a personnel file for her, or maintained medical records on her. *See Barnes v. Colonial Life & Accident Ins. Co.*, 818 F. Supp. 978, 981 (N.D. Tex. 1993) (dismissing claims against alleged employer who did not set work schedules, keep a personnel file, or maintain medical records on Plaintiff).

That Plaintiff was allegedly required to comply with Frontier policies and procedures does little to sway the needle firmly planted on the side of FSS. *See Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993) (plaintiff's conclusory assertion that State Farm's employee handbook covered plaintiff deemed "not sufficient to establish an employment relationship"). The same is true for Plaintiff's allegations that "Frontier's employees had the right to terminate and end the assignment of specific FSS workers."[19] Note here that Plaintiff <u>does not</u> allege that Frontier's employees had authority to terminate the employment of FSS workers, but rather, that they had authority to terminate their assignment (with Frontier). Such an allegation does not establish an employment relationship. *See Reith* 2006 U.S. Dist. LEXIS 16813.

Similarly, Plaintiff's allegation that Frontier was "among FSS's largest and most influential clients" does nothing to establish the economic realities portion of the test.[20] Plaintiff admits that *FSS* paid her wages throughout her employment, and makes no allegations that Frontier "paid [her] salary, withheld taxes, provided benefits, or set the terms and conditions of [her] employment."[21] *Mayes v. Kelly Servs., Inc.*, No. 4:03-CV-091-A, 2004 U.S. Dist. LEXIS 29675 (N.D. Tex. Feb. 11, 2004), *aff'd* 108 Fed. Appx. 932 (5th Cir. 2004) (finding for Onstar, where economic realities favored Onstar, and Onstar did not terminate plaintiff's employment). Thus, no basis exists to find

---

[19] ECF No. 7, ¶ 12.
[20] *Id.* at ¶ 14.
[21] *Id.* ¶ 12.

that the economic realities point to Frontier as Plaintiff's employer.

The court in *Reith v. TXU Corp.*, assessed whether the plaintiff had an employment relationship with TXU Corp. ("TXU") under remarkably similar circumstances. 2006 U.S. Dist. LEXIS 16813 (E.D. Tex. Apr. 4, 2006). There, the court found that no employment relationship existed, based on the following factors that are each directly mirrored in Plaintiff's allegations:

- TXU did not pay the plaintiff, withhold taxes on his behalf, or offer him benefits;[22]

- The plaintiff was largely trained and supervised by TXU;[23]

- While TXU had authority to determine when it no longer needed the plaintiff's services, it did not have authority to hire, fire, or promote;[24] and

- After the plaintiff complained of harassment by a TXU employee, TXU was not the entity which offered to transfer the plaintiff to a different location.[25]

*Id.* at *10-11. Ultimately, the court in *Reith* found that the plaintiff was not an employee of TXU. *Id.* at *12. Here, the analysis is the same: individuals who are not hired by the putative employer, do not receive remuneration for their services from the putative employer, and whose terms and conditions of employment are not dictated by the putative employer, do not have an employment relationship. On this basis, Plaintiff's own allegations establish that she was an employee of FSS, and not Frontier.

### *C. Plaintiff failed to state a plausible disparate treatment claim against Frontier*

Despite using the buzzwords for the elements and conclusory allegations, Plaintiff failed to state a plausible claim of disparate treatment discrimination on the basis of gender identity. In

---

[22] *Compare* with ECF No. 7, ¶ 12 ("FSS . . . paid her wages throughout her employment").
[23] *Compare* with *Id.* (Plaintiff "received extensive training from Frontier" and "on-the-job corrections and admonishments were delivered by Frontier's employees to FSS employees.").
[24] *Compare* with *Id.* (Frontier had the right to "terminate and end the assignment" of FSS employees); Gray Decl., Ex. A (Plaintiff was hired by, promoted by, and terminated by, FSS).
[25] *Compare* with Gray Decl., Ex. A (FSS "was requiring [Plaintiff] to accept a transfer" after Plaintiff's complaints of harassment).

order to survive a motion to dismiss in this context, "a plaintiff need not make out a *prima facie* case of discrimination under McDonnell Douglas." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). Yet Plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Id.* "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under [the Texas Labor Code]: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Id.* at 767. To establish these elements, Plaintiff must allege sufficient facts to "nudge [her] claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 547).

Notwithstanding Plaintiff's allegations of a hostile work environment (which are discussed in detail, *infra* subsection D), Plaintiff does not make a single allegation that would establish an adverse employment action by Frontier, taken against her because of her gender identity. Rather, Plaintiff merely pleads that "Defendant**s** discriminated against Plaintiff in connection with the terms, conditions, and privileges of her employment by, *inter alia*, terminating or causing the termination of Plaintiff's employment because of her transgender status."[26] Plaintiff makes a vague allegation against "Defendants," but fails to make any factual allegation of an adverse employment action taken by Frontier.

As established above, Plaintiff admitted in her Charge of Discrimination that FSS—<u>not</u> Frontier—required her to accept a transfer, or else face termination of her employment.[27] Thus, Plaintiff's only remaining allegation against Frontier in the Amended Complaint could be that Frontier allegedly "caus[ed] the termination of Plaintiff's employment because of her transgender

---

[26] ECF No. 7, ¶ 30.
[27] *See* Gray Decl., Ex. A ("FSS was requiring me to accept a transfer to New Orleans, LA. Per a correspondence dated February 25, 2019 from [a Human Resources Manager for FSS] I had until March 10, 2019 (13 days) to agree to the transfer or else I would be terminated.").

status."[28] Yet, the Complaint is devoid of any facts (as opposed to this lone subjective and vague statement) to support any actions taken by Frontier with respect to Plaintiff's employment with FSS. There are no factual allegations that Frontier discussed Plaintiff's transfer or termination (before or after it occurred) with FSS, that Frontier offered FSS any input into these decisions carried out by an FSS employee, or that Frontier was even aware that Plaintiff was being transferred.

To this point, there are no fact-based allegations whatsoever that Frontier and FSS have ever discussed any issues pertaining to Plaintiff, her complaints, her employment with FSS, her termination from FSS, or any other issue. Plaintiff has likewise failed to set forth a single comparator whom she believes was treated more favorably than herself, or was not transferred or terminated under nearly identical circumstances. *See Williams v. Health Texas Provider Network*, No. 3:16-CV-391-M-BK, 2017 U.S. Dist. LEXIS 92449, at *5 (N.D. Tex. June 1, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 92458 (N.D. Tex. June 15, 2017) (dismissing sex-based discrimination claim when plaintiff failed to point to any female comparators treated more favorably than himself); *see also Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (affirming summary judgment against plaintiff on discrimination claim when plaintiff failed to identify a single comparator outside of his protected class). It cannot therefore be said that Frontier was responsible for any adverse employment action against Plaintiff, much less that such action that was on the basis of her gender identity. Accordingly, Plaintiff's disparate treatment claim against Frontier should be dismissed for failure to state a claim.

---

[28] ECF No. 7, ¶ 30.

### *D. Plaintiff failed to exhaust her administrative remedies with respect to her hostile work environment claim against Frontier*

Plaintiff also purports to bring a claim of discrimination against Frontier, for "perpetuating a severe and pervasive hostile work environment toward Plaintiff because of her transgender status." Yet this allegation was not presented to the EEOC. Rather, Plaintiff's EEOC Charge only claims that she believes she has been "discriminated against because of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Labor Code," and " retaliated against for opposing unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Labor Code."[29] Plaintiff's EEOC Charge does not allege that she was subject to a hostile work environment, nor does she state that she made any complaints to that effect. Rather, Plaintiff states that she "reported this disparate treatment," and "the above-referenced discrimination."[30]

To exhaust administrative remedies, a hostile work environment claim should be raised in the plaintiff's EEOC charge. *See Wilson v. City of San Antonio*, No. SA-07-CA-0321, 2008 U.S. Dist. LEXIS 127403, at *11 (W.D. Tex. Aug. 6, 2008). A claim that is not explicitly raised in an EEOC charge is not necessarily subject to dismissal, but the Plaintiff is only considered to have exhausted the claim if it could "reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Induss, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970). Such a claim must be "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Sanchez*, 431 F.2d at 466. "Courts should

---

[29] *See* Gray Decl., Ex. A.
[30] *See Id.*

not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *Wilson*, 2008 U.S. Dist. LEXIS 127403 (citing *McClain*, 519 F.3d at 273).

"Ordinarily a stand-alone hostile work environment claim must be sufficiently presented in the EEOC charge and cannot be expected to grow out of a discrimination claim without additional allegations related to hostile work environment." *Crain v. Judson Indep. Sch. Dist.*, No. SA-16-CV-832, 2018 U.S. Dist. LEXIS 183777, at *46 (W.D. Tex. Oct. 26, 2018). Courts have regularly declined to find the exhaustion requirement met with respect to hostile work environment claims where the plaintiff alleged only specific and non-severe instances of discrimination in their EEOC charge. For example, in *Hill v. Dep't of Veterans Affairs*, the Fifth Circuit found that the administrative charges alleging three specific discriminatory events—the non-renewal of the plaintiff's clinical privileges, the decision to place him on involuntary leave, and his constructive discharge—were not reasonably likely to cause an investigation of a hostile work environment. No. 08-60532, 2009 U.S. App. LEXIS 2814, at *9-10 (5th Cir. Feb. 12, 2009) (per curiam); *compare with Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 773 (S.D. Tex. 2009) (finding that *seven* pages of handwritten notes attached to the EEOC charge, which included a variety of racially-themed statements attributed to defendants' personnel, indicated that a hostile work environment claim was in play, and a reasonable investigator presented with such a long series of incidents would include a hostile work environment within the investigation's scope). *Bechard v. VIA Metro. Transit* is also on point. No. 10-CA-285, 2010 U.S. Dist. LEXIS 106253 (W.D. Tex. Oct. 5, 2010). There, the plaintiff alleged "only three discrete instances of discrimination and retaliation," which were discriminatory based on the plaintiff's race and gender, and in retaliation for filing internal complaints of discrimination and for filing her first EEOC

charge. *Id.* at *5-6. The Court held that a hostile work environment claim could not be reasonably expected to grow out of these allegations. *Id.* at *6. Specifically, the Court found that the neither of the administrative charges filed alleged any facts relating to the factors of the hostile work environment test, such as whether the conduct was physically threatening or humiliating, or whether the conduct interfered with the employee's work performance. *Id.*; *see also Wilson*, 2008 U.S. Dist. LEXIS 127403 (holding similarly, based on plaintiff's EEOC charge failing to allege similar the key factors of a hostile work environment claim).

As with *Bechard*, Plaintiff's EEOC Charge does not reference a hostile work environment, nor does she make any reference to alleged conduct that is severe and pervasive, that is physically threatening or humiliating, or otherwise interfered with her performance.

Plaintiff did not administratively exhaust her hostile work environment claim against Frontier, and it therefore must be dismissed.

### *E. Plaintiff failed to state a plausible hostile work environment claim against Frontier*

Even assuming that Plaintiff did exhaust her administrative remedies, she nevertheless failed to state a plausible hostile work environment claim against Frontier. To state a claim, Plaintiff must allege she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her belonging to the protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Certainly, such a claim requires allegations of severe and pervasive conduct to alter the conditions of employment. *Penn. State Police v. Suders*, 542 U.S. 129, 133 (2004). In determining whether the environment has become hostile, courts will look at the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651. Yet as with her other allegations, Plaintiff fails to provide any factual basis or support to show severe and pervasive conduct, excepting her use of the term itself. Instead, Plaintiff makes two allegations of harassing conduct: Frontier's Regional Manager "derided Plaintiff's job performance and remarked that Plaintiff was a 'he-she' and a 'waste of space,'" and also "again derided Plaintiff's job performance and arbitrarily outed her as transgender to [Plaintiff's] subordinate, stating 'You know [Plaintiff] is transgender, right?'"[31]

These two alleged incidents do not establish "severe" conduct. Although the statements, if true, would be inappropriate and distasteful, Plaintiff has not alleged that Frontier's Regional Manager interfered with her job responsibilities, nor that she felt physically threatened by this conduct. The work environment must also be "permeated" with "discriminatory intimidation, ridicule, and insult." *Lee v. Reg'l Nutrition Assistance Inc.*, 471 Fed. App'x 310, 311 (5th Cir. 2012). Plaintiff's two alleged and isolated incidents cannot therefore support her claim, in that they are not "pervasive." *See, e.g.*, *Id.* (affirming dismissal based on three separate incidents the court considered "isolated," where a coworker used a racial epithet to refer to plaintiff, the same coworker said that plaintiff's skin "was too dark to be seen without the benefit of sunlight," and another employee drew a tombstone on a chalkboard with "R.I.P" and plaintiff's initials.); *Malin v. Orleans Par. Commc'n Dist.*, 718 Fed. App'x 264, 273 (5th Cir. 2018) (upholding a 12(b)(6) dismissal because a reasonable person would not believe that a coworker describing her sex life six times was severe or pervasive enough to create an actionable hostile work environment). On these facts, it is not plausible that a reasonable person would believe this alleged conduct was objectively pervasive or severe. *See Malin*, 718 Fed. App'x at 272-273.

---

[31] Id. at ¶ 15.

Further, Plaintiff failed to plausibly allege that Frontier "knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez*, 670 F.3d at 651. Instead, Plaintiff admits that Frontier was aware of the alleged harassing conduct, by virtue of Frontier's "complete and thorough investigation."[32] Whether Frontier informed Plaintiff of who was contacted in connection with the investigation, or the nature of the company's remedial actions, is irrelevant to this inquiry. *See Harvill v. Westward Commc'ns., L.L.C.*, 433 F.3d 428, 437-438 (5th Cir. 2005) (finding prompt remedial action based on an investigation, despite company not confronting the alleged harasser, or interviewing witnesses). Rather, Plaintiff's admission that the Company did in fact undergo an investigation is evidence of prompt remedial action. *Id.*; *see also Cavalier v. Clearlake Rehabilitation Hosp., Inc.*, 306 Fed. App'x 104, 107 (5th Cir. 2009) (defendant took prompt remedial action after it "assigned a human resources investigator to look into Cavalier's written complaint.").

Lacking these two ultimate elements of a hostile work environment claim, Frontier cannot be held liable. Thus, Plaintiff's claim against Frontier on this basis should be dismissed.

### *F. Plaintiff failed to state a plausible retaliation claim against Frontier*

Plaintiff also alleges that Defendant Jones retaliated against her for complaining about alleged discrimination. To prove a *prima facie* case of retaliation under the Texas Labor Code, the "plaintiff must show that: (1) [she] engaged in an activity protected by Title VII; (2) [she] was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). Here, the analysis of Plaintiff's claim of retaliation against Frontier is similar to her claim of discrimination based on disparate treatment: under both causes of action, Plaintiff must prove

---

[32] Id. at ¶ 17.

that Frontier subjected her to an adverse employment action, and she must prove a link between that adverse employment action and her gender identity.

For purposes of brevity, Frontier will not repeat its discussion of that analysis again in this section, but instead, incorporates the foregoing briefing by reference. In summary, however, Plaintiff's Complaint fails to adequately plead that Frontier took any adverse employment action, or was otherwise involved in "her demotion, transfer, probation, and eventual termination." As such, her retaliation claim against Frontier must fail.

## IV. CONCLUSION

Plaintiff has not pled sufficient facts to create a plausible inference of discrimination or retaliation by Frontier. As a result, Frontier is entitled to dismissal of all claims asserted in Plaintiff's First Amended Complaint, and Frontier requests that the Court issue an order dismissing all of Plaintiff's claims against Defendant Frontier Airlines, Inc.

Dated: August 4, 2020

        Respectfully submitted,

*/s/ Kimberly R. Miers*
Kimberly R. Miers
State Bar No. 24041482
Andrew Gray
State Bar No. 24106023
LITTLER MENDELSON P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
512.982.7250
512.982.7248 – facsimile
kmiers@littler.com
agray@littler.com

**ATTORNEYS FOR DEFENDANT FRONTIER AIRLINES, INC.**

## CERTIFICATE OF SERVICE

On the 4th day of August 2020, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, Austin Division, using the Electronic Case Filing system of the Court. I hereby certify that I have served all counsel of record via the Court's e-filing system as follows:

*Via Email:  trenton@rosslawgroup.com*
Daniel B. Ross
Trenton Lacy
ROSS SCALISE LAW GROUP
1104 San Antonio Street
Austin, Texas  78701

>  */s/ Andrew Gray*
>   Andrew Gray

4827-0164-7044.2 057446.1023