IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRYNNE SOUKUP, *Plaintiff*, | § § § § § § § § § | |
| v. | | Civil Action No. 1:20-CV-648-RP |
| FRONTIER AIRLINES, INC. AND FLIGHT SERVICES & SYSTEMS, LLC, *Defendants*. | | |

### RESPONSE IN OPPOSITION TO DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS

Defendant Frontier Airlines, Inc.'s ("Frontier") Motion to Dismiss should be denied, as the arguments contained therein are meritless. Plaintiff's Original Complaint (the "Complaint") contains sufficient factual matter to state each claim for relief. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, Plaintiff's Complaint—as well as her EEOC Charge—pled sufficient factual material demonstrating that Frontier and Defendant Flight Services & Systems, LLC ("FSS") were Plaintiff's joint employers and are both properly liable for their unlawful and discriminatory conduct.

Second, Plaintiff's Complaint—as well as her EEOC Charge—pled sufficient factual material demonstrating that Frontier and FSS (collectively "Defendants") were responsible for the adverse employment actions giving rise to these claims.

Finally, Defendant's argument that Plaintiff failed to exhaust her administrative remedies for her hostile work environment claim is wholly meritless. Aside from the hostile work environment claim clearly described in her initial EEOC Charge, Plaintiff's rebuttal to Frontier's statement of position—dated September 12, 2019 and sent to the EEOC as well as to all parties to

this suit—thoroughly and extensively described these claims, repeatedly using the phrase 'hostile work environment' in doing so. Frontier's assertion that Plaintiff failed to raise her hostile work environment claim to allow for an EEOC investigation is therefore incorrect.

# I.
# ARGUMENTS

I.      AS REFLECTED IN PLAINTIFF'S ORIGINAL COMPLAINT, AS WELL AS IN HER EEOC CHARGE, DEFENDANT FRONTIER WAS A JOINT EMPLOYER OF PLAINTIFF.

1.      In determining whether an employment relationship exists, the Fifth Circuit has historically applied the "hybrid economic realities/common law control test". *See Diggs v. Harris Hosp.–Methodist*, Inc., 847 F.2d 270, 272 (5th Cir. 1988). The economic-realities portion of the test asks whether putative employees, "as a matter of economic reality, are dependent upon the business to which they render service." *Id.* at 272 n.3. The common law control portion of the test assesses "the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed." *Id.* at 272 (citation omitted).

2.      In the economic realities portion of this test, courts focus on whether as a matter of economic reality, "the worker is economically dependent upon the alleged employer…consider[ing] five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998).  No single factor is determinative. *Brock v. Mr. W Fireworks, Inc*., 814 F.2d 1042, 1043–44 (5th Cir. 1987).

3. Regarding the latter portion of the hybrid test, "[t]he right to control an employee's conduct is the most important component[.]" *Deal v. State Farm Cty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993).

4. Plaintiff's Complaint asserts the following properly-pled factual material relevant to this analysis:

- "Plaintiff received extensive training from [Frontier]."
- "[Plaintiff] was expected to conduct business for and on behalf of [Frontier] in accordance with its policies and procedures."
- Plaintiff worked in close association with, and often at the direction of, [Frontier] and its employees."
- "On-the-job corrections and admonishments were delivered by [Frontier]'s employees to FSS employees."
- "[Frontier]'s employees had the right to terminate and end the assignment of specific FSS workers."
- "Ultimately, [Frontier]'s employees had the right to control FSS employees."
- "FSS further admitted that [Frontier]'s employees interacted with and supervised FSS's employees servicing Frontier flights."
- "Because [Frontier] was among FSS's largest and most influential clients, Plaintiff was largely economically-dependent upon the business of [Frontier]."

5. At this early stage of the suit, Plaintiff has no burden to prove that Frontier was her joint employer; Plaintiff is simply tasked with pleading "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570.

6.  Based on the facts contained in her Complaint, Plaintiff has more than satisfied this burden by pleading facts sufficient to raise a plausible claim that Frontier is liable for violations of the Texas Labor Code as her joint employer.

## II. PLAINTIFF'S ORIGINAL COMPLAINT, AS WELL AS HER EEOC CHARGE, CONTAIN FACTS SUFFICIENT TO DEMONSTRATE THAT DEFENDANT FRONTIER: (1) TERMINATED PLAINTIFF; AND/OR (2) CAUSED PLAINTIFF'S TERMINATION.

7.  Frontier argues that the facts pled in Plaintiff's Complaint fail to raise a plausible claim for discrimination or retaliation because Plaintiff failed to plead facts demonstrating that Frontier took an adverse employment action against her.

8.  To support this contention, Frontier points to a sentence in Plaintiff's EEOC Charge—not her Complaint—which Frontier argues demonstrates that FSS, rather than Frontier, fired Plaintiff.

9.  However, Frontier removed this sentence, itself written over a year before the filing of this action and before Plaintiff had the benefit of the subsequent EEOC investigation, entirely from the surrounding context. Specifically, Plaintiff's EEOC Charge makes it clear that FSS—co-joint employer with Frontier—notified her that she was to be transferred, demoted, and put on probation *soon after* she brought her concerns of discrimination and harassment to fellow joint employer Frontier.

10.  Although Plaintiff was informed that FSS was taking this action, Plaintiff contended throughout the EEOC and continues to contend that Frontier played a significant role in her termination. Plaintiff suspects, upon information and belief, that the ultimate responsibility for her termination may rest with Frontier. Plaintiff's Complaint alleged sufficient facts to allow her to continue developing this theory through discovery.

### III.  PLAINTIFF EXHAUSTED ALL ADMINISTRATIVE REMEDIES WITH THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND TEXAS WORKFORCE COMMISSION FOR HER HOSTILE WORK ENVIRONMENT CLAIM.

11. Finally, Frontier appears to argue that Plaintiff failed to raise her hostile work environment claim before the EEOC, and therefore, failed to exhaust her administrative remedies for this claim.

12. In contrast, Plaintiff asserted her hostile work environment claim during the administrative process as early as her initial EEOC Charge before repeatedly asserting it thereafter.

13. Plaintiff's EEOC Charge repeatedly describes severe and pervasive harassment she endured while employed by Defendants, including being called a "he-she" and being outed as transgender by Frontier's employee. Her charge further describes, in detail, her attempts to comply with relevant U.S. Supreme Court precedent concerning hostile work environment claims by taking advantage of preventative or corrective opportunities provided by Frontier and to otherwise avoid harm. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998*); Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

14. What's more, both Frontier and the EEOC were aware of Plaintiff's hostile work environment claims via her written response to Frontier's Position Statement. In that response, **Exhibit 1**, Plaintiff dedicated an entire section to outlining her hostile work environment claims, explicitly using the term "hostile work environment" repeatedly while doing so. *See* **Exhibit 1**, § II. Plaintiff's counsel forwarded a copy of this response to the EEOC, as well as to Frontier's counsel. *See* **Exhibit 2**.

15. In sum, Frontier's argument that Plaintiff failed to properly exhaust her administrative remedies for her hostile work environment claim is entirely without merit. The

EEOC and Frontier were completely aware of these claims at all times during the administrative process, and the EEOC and TWC were fully apprised of these claims when issuing their respective notices of Plaintiff's right to sue.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Frontier's Motion to Dismiss in its entirety.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following via the Court's CM/ECF Document Filing System this August 18, 2020 upon all counsel of record.

Respectfully submitted,

**ROSS • SCALISE LAW GROUP**
1104 San Antonio Street
Austin, Texas 78701
T: (512) 474-7677
F: (512) 474-5306

*/s/ Daniel B. Ross*
**Daniel B. Ross**
State Bar No. 00789810
dan@rosslawgroup.com
**Trenton Lacy**
State Bar No. 24106176
trenton@rosslawgroup.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that a true and correct copy of the foregoing instrument was served upon all parties of record to this suit in accordance with the Federal Rules of Civil Procedure on the 18th day of August, 2020:

Via e-mail: kmiers@littler.com; agray@littler.com

LITTLER MENDELSON P.C.
Kimberly Miers

Andrew Gray
100 Congress Avenue, Suite 1400
Austin, Texas 78701

**ATTORNEYS FOR DEFENDANT FRONTIER AIRLINES, INC.**