

THE ALLAN HOUSE
1104 SAN ANTONIO STREET
AUSTIN, TEXAS 78701

(512) 474-7677  |  Phone
(512) 474-5306  |  Fax

TRENTON N. LACY
ATTORNEY AT LAW

TRENTON@ROSSLAWGROUP.COM

September 12, 2019

**<u>Via electronic mail and EEOC Portal</u>**
U.S. Equal Employment Opportunity Commission
Attn: Deanna Hayward, Investigator
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229
deanna.hayward@eeoc.gov

  Re: **Response to Statement of Position**
     **Charging Party: Brynne Soukup**
     **Respondent: Flight Services & Systems, Inc. & Frontier Airlines**
     **Charge Numbers: 451-2019-02058 & 451-2019-0259**

Dear Ms. Hayward:

  My client, Ms. Brynne Soukup, provides the following rebuttal to the position statement provided by Respondents, Flight Services & Systems, Inc. ("FSS") and Frontier Airlines ("Frontier"). This rebuttal is submitted for the purpose of aiding the EEOC in its investigation and does not constitute a binding statement of Ms. Soukup's claims. Nor is it intended to be used as evidence in court. Ms. Soukup has not had an opportunity for a full investigation or formal discovery and reserves her right to present new or additional information at a later date.

  Ms. Soukup provides the following legal and factual rebuttals to Respondents' statements of position:

**I.** **<u>Respondents were Joint Employers of Ms. Soukup</u>**

  In its statement of position, FSS appears to contend that it is not liable to Ms. Soukup for the harassment she experienced because David Woodard is not an FSS employee. Likewise, Frontier's statement of position appears almost singularly dedicated to the notion that it is not liable to Ms. Soukup for the harassment she experienced because she was not a Frontier employee.

  In reality, both Respondents should be held liable under Title VII, as they both exercised control over significant aspects of Ms. Soukup's employment. In determining whether an employment relationship exists, the Fifth Circuit has historically applied the "hybrid economic

**EXHIBIT**

**1**

realities/common law control test". *See Diggs v. Harris Hosp.–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) (citation omitted). The economic-realities portion of the test asks whether putative employees, "as a matter of economic reality, are dependent upon the business to which they render service." *Id.* at 272 n.3 (citation omitted). The common law control portion of the test assesses "the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed." *Id.* at 272 (citation omitted).

In the present case, Ms. Soukup cedes that she did not receive her paycheck from Frontier, and to her knowledge, Mr. Woodard has never received a paycheck from FSS. However, this is not to say that Ms. Soukup was not dependent upon Frontier for employment, nor that Frontier did not exercise the right to control details and means by which Ms. Soukup's work was meant to be performed. FSS contracts with Frontier for most, if not all, of its airport personnel: from baggage handling to passenger and security services. In that regard, Ms. Soukup received extensive training from Respondent Frontier as part of her employment and worked in close association with Frontier's personnel—including Mr. Woodard—typically for the benefit of Frontier. Moreover, Ms. Soukup strongly suspects that her complaint to Respondent Frontier about Mr. Woodard directly led to her termination by Respondent FSS. Despite their attempts to distance themselves from one another, Respondent Frontier and Respondent FSS and more appropriately viewed as joint employers of Ms. Soukup.

## II. Respondents Took No Meaningful Action to Address Ms. Soukup's Complaints

However, even assuming, *in arguendo*, that Respondents are not joint employers, FSS does not escape liability as a matter of law. In its position statement, FSS claims that "Courts have routinely held that employers are not responsible for the acts of third parties who discriminate against employees". This is a misstatement of well-established Title VII law. *See* 29 C.F.R. § 1604.11(e); *Gardner v. CLC of Pascagoula, LLC,* No. 17-60072 (5th Cir. 2018) ("Claims of sexual harassment typically involve the behavior of fellow employees. But not always. Because the ultimate focus of Title VII liability is on the employer's conduct—unless a supervisor is the harasser, a plaintiff needs to show that the employer knew or should have known about the hostile work environment yet allowed it to persist."). Specifically, "[a]n employer who condones or tolerates the creation of [a hostile work] environment should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073 (10th Cir. 1998).

In the present case, FSS attempts to discredit Ms. Soukup by claiming that her statement that Respondents "took no action" in response to her complaints was knowingly false. Specifically, FSS largely points to a January 15, 2019 e-mail between Mr. Phil Armstrong and Jake Filene, Chief Operations Officer of Frontier, to which Ms. Soukup was not a party. In this correspondence, it appears that Mr. Armstrong briefly discusses Ms. Soukup's "actionable" complaints concerning Mr. Woodard at the end of a laundry list of other, unrelated complaints about Mr. Woodard. Notably, Mr. Filene appears to respond on January 16, 2019 by largely

EXHIBIT

1

Rebuttal to Respondents' Position Statements
September 12, 2019
Page 3 of 5

dismissing these complaints as merely a response to a "notice to cure letter" sent to FSS, and complaining about the customer service that FSS is providing to Respondents' customers.

Although Mr. Armstrong eventually informs Ms. Soukup of the investigation, as of January 31, 2019, it appears that Andrea Warfield, Frontier's HR, had not been informed of—let alone investigated—the complaint. The lack of action from Respondents prompted Ms. Soukup to personally file a complaint on January 21, 2019. One week later, Ms. Warfield informed David Morris that the investigation has "reached its conclusion" and she "cannot divulge specifics of the case". Two weeks later, Ms. Soukup was demoted and transferred.

Accordingly, although Ms. Soukup cedes that Mr. Armstrong took minimal action by including her complaints at the end of a broader e-mail complaining of Mr. Woodard's conduct, the conduct of Respondents in response to Ms. Soukup's complaints was insufficient, largely dismissive of these complaints, and in any event, resulted in her retaliatory termination by Respondents as a result of her protected activity and/or membership to a protected class

**III.    Respondents' Treatment of Ms. Soukup Amounts to Adverse Employment Actions**

The position statement of FSS curiously attempts to portray Ms. Soukup's demotion and transfer as something other than an adverse employment action. This contention warrants little discussion: Respondent's own position statement cedes that the transfer was "technically a demotion", and its own cited authority points to "job duties" as being among the factors in determining whether an employment action is adverse. *Pegram v. Honewell, Inc.*, 361 F.3d 272, 282-84 (5th Cir 2004).

Further, Respondents' employment action is accurately characterized as a constructive discharge. An employee's resignation may give rise to action under Title VII if circumstances amount to a constructive discharge, where working conditions become "so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania v. State Police v. Suders*, 542 U.S. 129, 143-144 (2004); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004). This requires "aggravating factors" which result in "a greater degree of harassment than is required for a hostile work environment claim." *Id*. at 331-32. These factors include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id*. at 331-32.

In the present case, FSS demoted Ms. Soukup, reduced her job responsibilities, and offered her continued employment on terms less favorable than her former status. Moreover, in order to remain employed by FSS, Ms. Soukup would have been required to accept employment in a town that was over five-hundred miles away. Notably, per the attached determination dated

EXHIBIT 1

Rebuttal to Respondents' Position Statements
September 12, 2019
Page 4 of 5

May 8, 2019, the Texas Workforce Commission determined that Ms. Soukup had work-connected good cause to resign from her position with FSS such that she was qualified for unemployment benefits.

Accordingly, Respondent FSS' contention that its treatment of Ms. Soukup does not amount to an adverse employment action is without merit.

### IV.   Clear Causal Connection Exists Between Ms. Soukup's Protected Class/Activity, and the Above-Referenced Adverse Employment Actions

Lastly, Respondent FSS claims that Ms. Soukup cannot prove a causal connection between her protected activity and/or membership to a protected class the above-referenced adverse employment action. On the contrary, Ms. Soukup can establish that the given explanation for the adverse employment action is mere pretext in several different ways.

First, the weak purported justification for Ms. Soukup's termination is evidence of pretext. This is particularly true given FSS' own statement that the adverse employment action was "not reflective" of Ms. Soukup's performance. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination"); *Young v. UPS*, 135 S. Ct. 1338, 1356 (2015) (Alito, J., concurring) ("Of course, when an employer claims to have made a decision for a reason that does not seem to make sense, a factfinder may infer that the employer's asserted reason for its action is a pretext for unlawful discrimination.")

Second, Respondent's position statement, as well as the accompanying affidavit of Robert Armstrong, indicate that the decision to demote and transfer Ms. Soukup was attributable to the "little aptitude" she showed in her Regional Director role; however, this suggestion is never elaborated upon in Respondent FSS' position statement, and there is no evidence that Ms. Soukup was ever counseled about any shortcomings in her performance. *Logan v. Denny's, Inc.*, 259 F. 3d 558 (6th Cir. 2001) (no evidence that plaintiff was counseled about alleged problem).

Third, although FSS claims that its decision to demote and transfer Ms. Soukup was a nondiscriminatory business personnel decision associated with FSS no longer providing services at the airport, it appears that Ms. Soukup was the only employee who suffered a significant adverse employment action as a result. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir.2000) ("RIFs typically involve the layoff of many employees at once, and employers will not be allowed cynically to avoid liability by terming a decision to fire an employee with a unique job description as a 'RIF' when the decision in fact was nothing more than a decision to fire that particular employee.")

Fourth, the suspicious timing of the decision to terminate Ms. Soukup—mere weeks after she engaged in protected activity under Title VII—is further evidence of pretext. *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 615 (1989) (one may infer

EXHIBIT

1

discrimination from "proximity in time" between protected activity and adverse employment decision).

## V. Conclusion

For the foregoing reasons, we respectfully request that the Commission return a finding of discrimination in this matter. If you have any additional questions, please do not hesitate to contact me.

Respectfully,

*/s/ Trenton Lacy*

Trenton Lacy
Attorney at Law

EXHIBIT 1