IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BRYNNE SOUKUP, ) | |
|     *Plaintiff*, ) | |
| ) | Civil Action No. 1:20-cv-648-RP |
| ) | |
| v. ) | |
| ) | |
| FRONTIER AIRLINES, INC. and ) | |
| FLIGHT SERVICES & SYSTEMS, LLC, ) | |
|     *Defendants*. ) | |

**DEFENDANT FLIGHT SERVICES & SYSTEMS, LLC'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Flight Services & Systems, LLC ("FSS"), moves this court for an order dismissing Plaintiff Brynne Soukup's First Amended Complaint ("First Amended Complaint") for failure to state a claim for which relief may be granted.

**I.    Introduction.**

Plaintiff, Brynne Soukup, a former employee of defendant Flight Services & Systems, LLC ("FSS"), alleges, in her First Amended Complaint that FSS and co-defendant Frontier Airlines, Inc. ("Frontier") discriminated against her on the basis of her gender identity in violation of the Texas Commission on Human Rights Act ("TCHRA") (Tex. Lab. Code § 21.105) (Count 1).[1] In addition, she alleges that both defendants discriminated against her in violation of the TCHRA (Tex. Lab. Code § 21.055) on the basis of retaliation for opposing an unlawful employment practice (Count 2)[2]. She also alleges, against FSS only, discrimination on the basis of gender

---

[1] First Amended Complaint, ECF No. 7, at ¶¶ 24-32 (hereinafter "ECF No. 7").
[2] ECF No. 7, at ¶¶ 33-39.

identity in violation of Title VII, 42 U.S.C. § 2000e-2 (Count 3)[3]. Finally, she alleges that FSS retaliated against her for opposing an unlawful employment practice under Title VII, 42 U.S.C. § 2000e-3 (Count 4)[4]. As discussed below, Plaintiff does not plead sufficient facts to support the allegations against FSS, which must therefore be dismissed.

## II.      Standard for Dismissal Under Rule 12(b)(6).

In *Teague v. Williamson County, et. al.*, No. 1:18-CV-1098-RP, 2020 U.S. Dist. LEXIS 87695, at *12 (W.D. Tex. May 19, 2020) (Pitman, J.), this Court articulated the process and requirements under Fed. R. Civ. Proc. 12(b)(6) for determining whether a complaint fails to state a claim upon which relief can be granted:

> "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570*).*
>
> A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Thus, in pleading claims of sex discrimination or retaliation sufficient to survive a motion to dismiss for failure to state a claim, while a plaintiff need not make out a *prima facie* case of discrimination, she must, "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make their case plausible." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d

---

[3] ECF No. 7, at ¶¶40-47.
[4] ECF No. 7, at ¶¶48-54.

762, 766 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).  This is likewise true of retaliation claims. *Jenkins v. State Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017).  While a plaintiff need not state facts establishing a *prima facie* case, the elements of such a *prima facie* case inform and guide the court in determining if a claim has been stated. *Id.*

### III. FSS was not the joint employer of the offending Frontier employee and so cannot be liable for his alleged conduct.

In its pending Motion to Dismiss, Defendant Frontier refutes plaintiff's claim that FSS and Frontier were Plaintiff's joint employers, arguing that the First Amended Complaint contains no facts to support an employment relationship between Soukup and Frontier.  However, as it relates to FSS, the real issue is not whether Soukup was the employee of Frontier, but rather whether the alleged Frontier offender, David Woodard,[5] was the agent of FSS.  The First Amended Complaint is deficient in that it fails entirely to allege that Frontier's Regional Manager Woodard was jointly employed by the defendants so as to establish an agency or employment relationship with FSS.

An employer's liability under Title VII and the Texas Labor Code is based upon principles of agency. *Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013); *Gardner v. CLC of Pascagoula. L.L.C.,* 915 F.3d 320 (5th Cir. 2019). Here, the First Amended Complaint states no facts establishing an agency relationship between Woodard and FSS.  Rather, it establishes only that Frontier was a client of FSS and that Woodard was solely Frontier's employee. The First Amended Complaint asserts only the following facts concerning Woodard's employment:

- Frontier was "among FSS' largest and most influential clients;"[6]
- "Plaintiff's subordinates reported several incidents of harassing and derogatory behavior by *Frontier's* Regional Manager [Woodard] concerning Plaintiff and Plaintiff's gender identity;"[7]

---

[5] While not identified by name in the Amended Complaint, Woodard is identified in Plaintiff's EEOC charge which is attached as Exhibit A to this motion.  FSS further asks this Court to take judicial notice of Plaintiff's EEOC Charge.
[6] ECF No. 7, at ¶ 14.
[7] ECF No. 7, at ¶ 15.

3

- Plaintiff complained to *Frontier's* Human Resources Department; [8]

- *Frontier's* HR department "claimed to have concluded a 'complete and thorough' investigation;" [9]

- *Frontier still employs* the Regional Manager who allegedly made the offending remarks; [10]

(emphasis added).

These statements do not even suggest an employment or agency relationship between Woodard and FSS. There are no allegations that FSS could control or direct Woodard's activities or that FSS could hire, fire, promote him, or otherwise control his activities. Therefore, FSS cannot be vicariously liable for his actions. Woodard was thus a non-employee as to FSS. And Plaintiff alleges that it was Frontier who "refused to identify any remedial actions," [11] "did not contact Plaintiff to obtain additional information," [12] "did not contact Plaintiff's subordinates to obtain additional information," [13] and, "still employs the Regional Manager who referred to Plaintiff as a "he-she" and a "waste of space."[14]

As the court held in *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't.,* 479 F.3d 377, 380 (5th Cir. 2007), determining whether a defendant is an "employer" under Title VII is a two-step process. "First, the court must determine whether the defendant falls within Title VII's statutory definition of an 'employer' . . . If the defendant meets this definition, the court must then analyze whether an employment relationship exists between the plaintiff and the defendant." *Id*. (internal citations omitted). Here, FSS concedes it is a statutory employer, albeit

---

[8] ECF No. 7, at ¶ 16.
[9] ECF No. 7, at ¶ 17.
[10] ECF No. 7, at ¶ 20.
[11] ECF No. 7, at ¶ 17.
[12] ECF No. 7, at ¶ 18.
[13] ECF No. 7, at ¶ 19.
[14] ECF No. 7, at ¶ 20.

not of Woodard. As to the second step of the analysis, the Fifth Circuit applies a "hybrid economic realities/common law control test" to determine whether an employment relationship exists under both Title VII and the TCHRA. *Id.* Here, the First Amended Complaint fails to include any facts to make an agency or employment relationship between FSS and Woodard facially plausible.

The most important part of the control component of the test is "[t]he right to control the employee's conduct." *Id*. at 380 (internal citations omitted). Factors to be considered in this determination of control include the right to set an employee's work schedule, the right to supervise an employee, and the ultimate right to hire or terminate an employee. *Id.* The facts in the First Amended Complaint fail entirely to meet this standard as there is no allegation that FSS had any degree of control over Woodard or, indeed, any Frontier employee. The First Amended Complaint therefore fails to satisfy the control component of the hybrid test, and FSS cannot be held liable for Woodard's actions.[15]

Further, the First Amended Complaint does not satisfy the economic realities component of the test. Plaintiff does not allege that FSS paid Woodard's salary, or that it withheld taxes, provided benefits or set the terms and condition of his employment. *Deal v. State Farm Cty. Mut. Ins. Co*., 5 F.3d 117, 119 (5th Cir. 1993). There are no facts asserted that even suggest that Woodard was an agent or joint employee of FSS or which would reasonably allow such an inference.

Plaintiff therefore has failed to plead adequate facts to establish to any standard of pleading that FSS had any employment relationship with Woodard, let alone to the plausibility standard of *Twombly*, 550 U.S. at 55, 570 and *Iqbal,* 556 U.S. at 679.

---

[15] There is no allegation that FSS acquiesced to or ratified Woodard's conduct and no facts from which this could reasonably be inferred. *See Gardner,* 915 F. 3d at 321; *Folkerson v. Circus Circus Enters.,* 107 F. 3d 754 (9th Cir. 1997).

## IV.     **Plaintiff has failed to state a claim for retaliation.**

Because David Woodard was not an employee or agent of FSS, FSS cannot be vicariously liable for his conduct which did not constitute an unlawful employment practice under Title VII or the TCHRA.  Plaintiff's transfer by FSS did not, as a matter of law, constitute retaliation. Section 704(a) of the Civil Rights Act of 1964, (Title VII) provides that:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any   of his employees . . .   because [the employee] has opposed *any practice made an     unlawful employment practice by this subchapter,* or because he has made a charge,       testified, assisted, or participated in any manner in an investigation, proceeding, or    hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added).   Section 703(a)(1) of the Act defines an unlawful employment practice as follows:

> It shall be an unlawful employment practice for an employer
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate    against any individual with respect to his compensation, terms, conditions, or  privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a)(1).  Thus, as this court has noted, in order to state a claim for retaliation under Title VII:

> [Plaintiff] must allege facts that tend to establish that: "(1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action." *Richards v. JRK Prop. Holdings,* 405 F. App'x 829, 831 (5th Cir. 2010). <u>Though a plaintiff is not required to plead a prima facie case of retaliation at the motion to dismiss stage, she must "'plead sufficient facts on all of the ultimate elements" of a retaliation claim to make her case plausible.</u> *Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 244-245 (5th Cir. 2017) (quoting *Chhim*, 836 F.3d at 470).

*Teague,* 2020 U.S. Dist. LEXIS 87695, at *30 (emphasis added).

Plaintiff has failed to plead that she engaged in a protected activity.  As discussed, Woodard was not FSS' agent or employee.   Plaintiff does not allege that Woodard was a co-worker or that

6

he was her supervisor. Rather, she asserts only that he was Frontier's employee. His relationship with FSS is thus even more tenuous than would be that of a non-supervisor or co-worker. Plaintiff's "opposition" in this case was to advise her employer, FSS, that a third party, the employee of its client, Frontier, had made inappropriate comments.[16] Nor, as discussed above, does Plaintiff assert that Woodard's comments could be attributed to FSS under any theory of agency. In *Stewart v. Sodexo Remote Site P'ship*, 2013 U.S. Dist. LEXIS 120402, *aff'd*, 2014 U.S. App. LEXIS 15608 (5th Cir. Aug. 14, 2014) the court held that:

> "[a] continuing course of racial harassment by a co-employee cannot be imputed to the employer unless the latter both knows of it and fails to take remedial action." *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978). As such, Stewart's opposition to the alleged racial remarks and paraphernalia of her subordinate co-workers is only considered a protected activity if Flanagan's or Hayes' conduct can be attributable to Sodexo . . . Accordingly, this Court concludes that [plaintiff's coworkers] actions [are] not attributable to Sodexo. Because these actions are not attributable to Sodexo, Stewart's resistance to these actions <u>does not constitute opposition to an unlawful employment practice</u>. As such, these notifications are not considered protected activity within the purview of Title VII.

(emphasis added and citations omitted). Because Woodard is not alleged to be an employee of FSS, his conduct, however heinous, cannot constitute an unlawful employment practice by FSS. Plaintiff has thus failed to plausibly allege that there was an unlawful employment practice in violation of 42 U.S.C. § 2000e-3(a). Her complaints to FSS about Woodard's conduct therefore cannot be considered opposition to an unlawful employment practice. Whatever the reason for her transfer, it cannot be considered retaliatory under Title VII or the TCHRA.

Plaintiff has further failed to allege a sufficient causal connection. As the court in *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x. 254 (5th Cir. 2011) held, proximity in time alone may be insufficient:

> Barkley fails to show, however, that Hedegaard, the person who he claims denied his request, knew of his January Amended Complaint to Papania. Hedegaard knew

---

[16] Note further that the alleged comments were made not to her, but rather to her subordinates.

7

of Barkley's 2001 Amended Complaint, but that was seven years earlier. And Papania may have informed Hedegaard of Barkley's Amended Complaint in 2008 as he did in 2001, but there is no evidence of that in the record. Without knowledge of Barkley's January 2008 involvement in protected activity, Hedegaard could not have retaliated against Barkley by prohibiting him from withdrawing his resignation. *See Manning v. Chevron Chem. Co*., 332 F.3d 874, 883 n.6 (5th Cir. 2003). Thus we affirm summary judgment on Barkley's retaliation claim.

Additionally, according to this circuit's caselaw, even if Hedegaard did know of Barkley's January Amended Complaint, the four-month gap in time, standing alone, is insufficient to establish prima facie evidence of causation. Fifth Circuit precedent on that point, although largely unpublished, fits with the Supreme Court's requirement that the temporal proximity be "very close" to show causation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). Barkley cites several cases that he claims state that a four-month period is sufficient, but those cases say no such thing."

Here also, the conclusory allegations in the First Amended Complaint fail to show causation. At ¶ 16, it states that, "[i]n January 2019, Plaintiff complained to FSS's leadership and Frontier's Human Resources Department about the Regional Manager's derogatory harassment."[17] Absolutely nothing is alleged as *to whom* in FSS' leadership she complained about the words uttered by Frontier's supervisory employee, or as to when in January, 2019 she complained. Then, in ¶ 21 of the First Amended Complaint, using the passive voice, Plaintiff states: "On February 25, 2019, Plaintiff learned she was being demoted, transferred to a location 500 miles away from her home in Austin, Texas, and placed on a 90-day 'probationary period,' during which if Plaintiff failed to meet certain undefined "performance standards and expectations," her employment would be terminated."[18] Again, there is absolutely no fact pleaded to show that the person at FSS to whom she complained at some unstated time in January, 2019, was the same person who informed her of the transfer, or that the person who made the actual decision to transfer her was the same person to whom she complained. That speculative leap goes far beyond any reasonable inference

---

[17] ECF No. 7, at ¶ 16.
[18] ECF No. 7, at ¶ 21.

that could be drawn.  Finally, ¶ 23 of the First Amended Complaint alleges that "[a]fter Plaintiff refused to accept the unjustified demotion, transfer, and probation, her employment was terminated."[19] The First Amended Complaint is silent as to *when* the termination occurred.[20]  Like the allegations found to be legally insufficient in *Barkley, supra,* the bare allegations of the First Amended Complaint, and any *reasonable* inferences to be drawn therefrom, fail to demonstrate causation on the face of the First Amended Complaint.  Instead, Plaintiff has substituted pure speculation to fill in the pleading gaps and so has failed to state a claim as a matter of law.

### V. Plaintiff has failed to plead her discrimination claim.

Plaintiff has alleged against FSS a claim of disparate treatment discrimination on the basis of sex (her gender identity) in violation of Title VII and the TCHRA.  To establish such a claim, a plaintiff must establish that she (1) belongs to a protected class; (2) is qualified for the position at issue; (3) was subject to an adverse employment action; and (4) was treated less favorably than other similarly situated employees outside of her class. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 507 (5th Cir. 2014); *Crankshaw v. City of Elgin & Thomas Mattis*, 2019 U.S. Dist. LEXIS 183500, at *26 (W.D. Tex. Jan. 14, 2019) (Pitman, J.).  In order to survive a motion to dismiss in this context, "a plaintiff need not make out a prima facie case of discrimination under *McDonnell Douglas*." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). But a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make their case plausible." *Id*. at 767 (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).  "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII:

---

[19] ECF No. 7, at ¶ 23.
[20] The naked allegations made in ¶ 37 and 52 that "a causal connection exists" adds nothing to stating a claim, since the statement is a mere conclusion without anything more to support it.

9

(1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Id.* (emphasis in original). When a plaintiff's claim rests on circumstantial evidence—like here— "[she] will ultimately have to show that [she] can satisfy the *McDonnell Douglas* framework," and "it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id.*

Here, Plaintiff has failed to allege sufficient facts to support an adverse employment taken by FSS *because of* her gender identity. Although Plaintiff has alleged that Frontier's Regional Manager Woodard made two, isolated comments about her to other subordinates, Plaintiff has failed to allege that FSS engaged in similar conduct or condoned such actions by Frontier.[21] And Plaintiff has failed to set forth a factual basis that FSS took any adverse action *because of* the conduct of Frontier's Regional Manager or Plaintiff's gender identity.[22] That Plaintiff has failed to allege sufficient facts that FSS took an adverse employment action because of her gender identity is further underscored by the fact that Plaintiff has failed to allege that she was treated less favorably than other similarly situated employees outside of her class. The Fifth Circuit has held that a plaintiff who fails to identify such a comparator or similarly-situated employee has failed to plead sufficient facts in support of a discrimination claim. *Chhim,* 836 F.3d at 470 (affirming that "[plaintiff] fails to plead sufficient facts to make a plausible claim that the University rejected his application . . . *because of* his race, color, or national origin" since he pled "no facts that suggest the applicant hired by the University was less qualified than [plaintiff] or was similarly situated"). And federal courts—including this Court—have dismissed discrimination claims for nearly

---

[21] For the reasons stated *supra*, § III, FSS did and does not have sufficient control over Frontier to render it a joint employer liable for the actions or inactions of Frontier.

[22] Rather that providing a sufficient factual basis, Plaintiff has generally alleged that "Defendants discriminated . . . by, inter alia, terminating or causing the termination of Plaintiff's employment because of her transgender status[.]" ECF No. 7, at ¶ 30 & 45. Such conclusory statements are insufficient. *Hobbs v. City of Garland,* No. 3:97-CV-3175, 1998 U.S. Dist. LEXIS 6678, at *8 (N.D. Tex. May 6, 1998) ("This mere conclusory statement in the Complaint is insufficient to avoid dismissal for failure to state a claim.").

10

identical pleading failures. *Crankshaw*, 2019 U.S. Dist. LEXIS 183500, at *26 ("Having failed to allege that her employer treated similarly situated employees outside the protected class more favorably, Crankshaw fails to state a sex-based discrimination claim under Title VII and the TCHRA."); *Williams v. Health Texas Provider Network,* No. 3:16-CV-391-M-BK, 2017 U.S. Dist. LEXIS 92449, at *5 (N.D. Tex. June 1, 2017), *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 92458 (N.D. Tex. June 15, 2017) (dismissing sex-based discrimination claim when plaintiff failed to point to any female comparators treated more favorably than himself).

### VI. Hostile Work Environment Claim.

#### A. Plaintiff failed to exhaust her administrative remedies with respect to a hostile work environment claim.

To the extent Plaintiff's First Amended Complaint may be construed to assert a hostile work environment under Title VII and TCHRA against FSS,[23] such a claim is barred because Plaintiff did not reasonably assert any hostile work environment claim to the EEOC. Plaintiff's EEOC Charge only claims that she believes she has been "discriminated against because of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Labor Code," and "retaliated against for opposing unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Texas Labor Code."[24] Plaintiff's EEOC Charge does not allege that she was subject to a hostile work environment, nor does she state that she made any complaints to that effect. Rather, Plaintiff states only that she "reported [her] disparate treatment," and "the above-referenced discrimination."[25]

---

[23] Plaintiff's first amended complaint does not assert hostile work environment as an independent cause of action. Rather, Plaintiff purports to bring a claim of discrimination against FSS for "perpetuating a severe and pervasive hostile work environment toward Plaintiff because of her transgender status[.]" ECF No. 7, at ¶ 30 & 45.
[24] Plaintiff's EEOC Charge, at p. 2, attached as Exhibit A.
[25] *Id*.

11

"In order to seek judicial relief under Title VII, an employee must first exhaust any administrative remedies." *Crankshaw v. City of Elgin & Thomas Mattis*, No. 1:18-CV-75-RP, 2019 U.S. Dist. LEXIS 183500, at *10 (W.D. Tex. Jan. 14, 2019) (Pitman, J.). "Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC[.]" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). "A rule of reason permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (cleaned up). Such a claim must be "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970).

"Ordinarily, a stand-alone hostile work environment claim must be sufficiently presented in the EEOC charge and cannot be expected to grow out of a discrimination claim without additional allegations related to hostile work environment." *Crain v. Judson Indep. Sch. Dist.*, No. SA-16-CV-832, 2018 U.S. Dist. LEXIS 183777, at *46 (W.D. Tex. Oct. 26, 2018). Federal courts—including the Fifth Circuit—routinely dismiss stand-alone hostile work environment claims where a plaintiff's administrative charge alleged only specific or discrete allegations of discrimination and retaliation. *Hill v. Dep't of Veterans Affairs*, No. 08-60532, 2009 U.S. App. LEXIS 2814, at *9-10 (5th Cir. Feb. 12, 2009) (per curiam) (holding that the administrative charges alleging three specific discriminatory events—the non-renewal of the plaintiff's clinical privileges, the decision to place him on involuntary leave, and his constructive discharge—were not reasonably likely to cause an investigation of a hostile work environment); *Gates v. Lyondell Petrochem. Co*., 227 F. App'x 409 (5th Cir. 2007) (per curiam) (finding plaintiff's hostile work

environment claim could not grow out of her EEOC charge where "she charged only her employer's discrete acts [of discrimination] . . . and made no mention of a hostile work environment"); *Williams v. City of Richardson*, No. No. 3:16-CV-2944, 2018 U.S. Dist. LEXIS 154603, at *12-13 (N.D. Tex. Aug. 15, 2018) (holding that plaintiff failed to administratively exhaust his hostile work environment claim where "the Charge does not mention a hostile work environment and identifies only discrete discriminatory acts between September 2015 and April 2016, rather than a continuous pattern"); *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 15-CV-1413-B, 2015 U.S. Dist. LEXIS 170296, 2015 WL 9269416, at *5 (N.D. Tex. Dec. 21, 2015) (finding plaintiff failed to exhaust his hostile work environment claim where nothing in his EEOC charge indicated he was enduring a hostile work environment, and where the discrimination charged was not continuous and "consisted solely of discrete discriminatory acts"); *Bechard v. VIA Metro. Transit*, No. 10-CA-285, 2010 U.S. Dist. LEXIS 106253, at *5-6 (W.D. Tex. Oct. 5, 2010) (holding that a hostile work environment claim could not be reasonably expected to grow out of these allegations of "only three discrete instances of discrimination and retaliation," which were discriminatory based on the plaintiff's race and gender, and in retaliation for filing internal complaints of discrimination and for filing her first EEOC charge); *Wesley v. Yellow Transp. Co.*, No. 05-CV-2266-D, 2008 U.S. Dist. LEXIS 7998, 2008 WL 294526, at *6 (N.D. Tex. Feb. 4, 2008) (holding that plaintiff's charge for racial discrimination and retaliation did not exhaust a hostile work environment claim, where the charge failed to mention that plaintiff was subjected to a hostile work environment).

Here, Plaintiff's EEOC Charge does not reference a hostile work environment, nor does she make any reference to alleged conduct that is severe and pervasive, that is physically threatening or humiliating, or otherwise interfered with her performance. Accordingly, Plaintiff

failed to administratively exhaust her hostile work environment claim, and it therefore must be dismissed.

### B.      Plaintiff failed to state a plausible hostile work environment claim.

Even assuming that Plaintiff did exhaust her administrative remedies (which FSS disputes), she has nevertheless failed to state a plausible hostile work environment claim.  To state a claim, Plaintiff must allege she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her belonging to the protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *see also Crankshaw v. City of Elgin & Thomas Mattis*, No. 1:18-CV-75-RP, 2019 U.S. Dist. LEXIS 183500, at *28 (W.D. Tex. Jan. 14, 2019) (Pitman, J.).  Under this standard, Plaintiff has failed to sufficiently plead a claim.

First, Plaintiff has failed to sufficiently plead that the alleged harassment affected a term, condition, or privilege of employment. As this Court has recognized, "for harassment to affect a term, condition, or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Crankshaw,* U.S. Dist. LEXIS 183500, at *28 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).  Title VII does not impose "a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient, and rather, harassment must be "extreme" to constitute an actionable change in the terms and conditions of employment. *Faragher v. City of*

14

*Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted). To make this determination, courts consider "all the circumstances" of a case, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 787-88 (quotation marks and citation omitted).

In Plaintiff's First Amended Complaint, aside from a conclusory statement that "Defendants discriminated against Plaintiff in connection with the terms, conditions, and privileges of her employment by . . . perpetuating a severe and pervasive hostile work environment toward Plaintiff because of her transgender status,"[26] Plaintiff has failed to allege a factual basis sufficient to establish severe or pervasive conduct.  At most, Plaintiff has alleged two, isolated statements made by Frontier's Regional Manager to other subordinates—and not by FSS or even to Plaintiff herself—which "derid[ed] Plaintiff's job performance and remarked that Plaintiff was a 'he-she' and a 'waste of space,'" and "again derided Plaintiff's job performance and arbitrarily outed her as transgender to [Plaintiff's] subordinate, stating 'You know [Plaintiff] is transgender, right?'"[27]  Two distasteful but isolated statements over Plaintiff's one and a half years of employment do not rise to the level of "severe or pervasive." *Lee v. Reg'l Nutrition Assistance Inc*., 471 Fed. App'x 310, 311 (5th Cir. 2012) (affirming dismissal based on three separate incidents the court considered "isolated," where a coworker used a racial epithet to refer to plaintiff, the same coworker said that plaintiff's skin "was too dark to be seen without the benefit of sunlight," and another employee drew a tombstone on a chalkboard with "R.I.P" and plaintiff's initials.); *Malin v. Orleans Par. Commc'n Dist*., 718 Fed. App'x 264, 273 (5th Cir. 2018) (upholding a 12(b)(6) dismissal because a reasonable person would not believe that a co-worker

---

[26] ECF No. 7, at ¶ 30 & 45.
[27] ECF No. 7, at ¶ 15.

15

describing her sex life six times was severe or pervasive enough to create an actionable hostile work environment). Indeed, Plaintiff's allegations of generic discrimination and two isolated incidents are similar to the hostile work environment claim asserted by the plaintiff in *Crankshaw* – which this Court dismissed for failure to state a claim. 2019 U.S. Dist. LEXIS 183500, at *28-29 (holding that the plaintiff had failed to state a hostile work environment claim under Title VII where "[t]he bulk of [plaintiff's] complaint is based on a single allegation of discrimination based on sex" and also "that [a co-worker] treated her and other female employees with disrespect in 2014").

Additionally, Plaintiff has failed to allege any facts that FSS knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez,* 670 F.3d at 651. Although Plaintiff alleges that "[i]n January 2019, [she] complained to FSS's leadership and Frontier's Human Resources Department about the [Frontier] Regional Manager's derogatory harassment,"[28] Plaintiff has failed to allege <u>any</u> facts that FSS failed to take prompt remedial action. Tellingly, Plaintiff's First Amended Complaint does not contain any allegation as to what FSS did or did not do in response to her complaint.[29] And although not disclosed in Plaintiff's First Amended Complaint, FSS did take prompt remedial action. FSS' Chief Operations Officer immediately submitted a written complaint to Frontier's Chief Operating Officer, denounced the alleged conduct by the Frontier Regional Manager, and requested that the Frontier Regional Manager be re-assigned away from Plaintiff. By failing to plead any facts in support her allegation that FSS failed to take prompt remedial action, Plaintiff has failed to state a claim for hostile work

---

[28] ECF No. 7, at ¶ 16.

[29] Although Plaintiff complains of certain responsive actions taken by Frontier's Human Resources Department, *see* ECF No. 7, at ¶ 17-20, Plaintiff does not make any similar allegations against FSS. And for the reasons stated *supra*, FSS did and does not have sufficient control over Frontier to render it a joint employer liable for the actions or inactions of Frontier's Human Resources Department.

environment against FSS. *Anyanwu v. Louisiana*, No. 18-00778, 2020 U.S. Dist. LEXIS 136313, at *8 (M.D. La. July 31, 2020) (holding that Plaintiff failed to state a claim for hostile work environment where she failed to allege that "Defendant knew or should have known about the harassment and failed to take prompt remedial action"); *Gearhart v. Eye Care Ctrs. of Am.*, 888 F. Supp. 814, 828 (S.D. Tex. 1995) ("Gearhart has not adduced specific facts demonstrating that EyeMasters failed to take prompt remedial action after receiving notice of Gearhart's complaint . . Thus, Gearhart's hostile work environment sexual harassment claim must be rejected.").

## CONCLUSION

For the reasons herein, Plaintiff has not pled sufficient facts to state a plausible inference for retaliation, discrimination, or hostile work environment against FSS. Therefore, FSS is entitled to dismissal of all claims asserted in Plaintiff's First Amended Complaint and respectfully requests that its Motion to Dismiss be granted.

Respectfully Submitted:

CHAFFE McCALL, LLP

*/s/ Sarah Voorhies Myers*
Sarah Voorhies Myers (pro hac vice)
Amy L. McIntire (pro hac vice)
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163
T: (504) 585-7000
F: (504) 544-6092
E: myers@chaffe.com
E: mcintire@chaffe.com

H. Michael Bush
Texas Bar No.24054296
2300 Energy Centre,1100 Poydras Street
New Orleans, LA  70163
T:  (504) 585-7000
F: (504) 544-6042
E: bush@chaffe.com
*Attorneys for Defendant,*
*Flight Services & Systems, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2020, a true and correct copy of the foregoing was served by filing the same in this Court's CM/ECF System.

/s/ *Sarah Voorhies Myers*