IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BRYNNE SOUKUP,<br>　　*Plaintiff*,<br><br>v.<br><br>FRONTIER AIRLINES, INC. and FLIGHT SERVICES & SYSTEMS, LLC,<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§   Civil Action No. 1:20-cv-648-RP<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF BRYNNE SOUKUP'S RESPONSE AND OPPOSITION TO DEFENDANT FLIGHT SERVICES & SYSTEMS, LLC'S MOTION TO DISMISS**

COMES NOW BRYNNE SOUKUP, Plaintiff in the above-styled action, and files this Response to Defendant FLIGHT SERVICES & SYSTEMS, LLC's ("FSS") Motion to Dismiss and Brief in Support (Def. Mot. to Dismiss and Br. in Supp., Oct. 7, 2020, ECF No. 19) ("Motion to Dismiss").

**I.
SUMMARY**

FSS's Motion to Dismiss should be denied in its entirety.

Plaintiff's First Amended Complaint and Demand for Jury Trial (Pl. First Am. Compl., Jul. 21, 2020, ECF No. 7) ("Amended Complaint") pleads sufficient factual matter to support Plaintiff's disparate impact claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Texas Labor Code ("TCHRA") against FSS. The nonconclusory factual statements in the Amended Complaint, accepted as true, allow for the reasonable inference that Plaintiff suffered an adverse employment action by FSS because of her gender identity.

The Amended Complaint further pleads sufficient factual matter to support Plaintiff's retaliation claims under Title VII and TCHRA against FSS. The nonconclusory factual statements in the Amended Complaint, accepted as true, allow for the reasonable inference that Plaintiff

suffered an adverse employment action because she alerted FSS to her reasonable, good faith belief that she was the target of unlawful discrimination.

Finally, the Amended Complaint contains sufficient factual matter to support Plaintiff's hostile work environment claims under Title VII and TCHRA against FSS. The nonconclusory factual statements in the Amended Complaint, accepted as true, allow for the reasonable inference that Plaintiff suffered severe or pervasive harassment because of her gender identity, which FSS was aware of yet failed to adequately remedy. Moreover, Plaintiff exhausted all administrative remedies for this claim, which fell within the scope of her administrative charge before the EEOC.

## II.
## ANALYSIS

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.* A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A.   **PLAINTIFF'S SEX DISCRIMINATION CLAIMS UNDER TITLE VII AND TCHRA.**

Title VII and TCHRA both prohibit employment discrimination because of sex, which includes discrimination because of gender identity. 42 U.S.C. § 2000e-2(a)(1); TEX. LAB. CODE § 21.051; *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731 (2020).

The "two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII [are]: (1) an adverse employment action, (2) taken against a plaintiff because of

her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (*quoting Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

As an initial matter, FSS's Motion to Dismiss appears to misinterpret the precedents of this Court, and other federal courts, in suggesting that "a [Title VII] plaintiff who fails to identify…a comparator or similarly-situated employee has failed to plead sufficient facts in support of a discrimination claim." Mot. to Dismiss 10-11; *see also Morris v. Town of Indep.*, 827 F.3d 396, 401 (5th Cir. 2016) ("With respect to the 'similarly situated employees' requirement, a plaintiff must show that [she] was treated less favorably than others under nearly identical circumstances.) Plaintiff does not understand the authority cited by FSS as supporting the existence of such a *per se* pleading requirement whereby, in order to survive a motion under Rule 12(b)(6), a Title VII plaintiff must affirmatively identify an employee from outside their protected class whom they were treated less favorably than under nearly identical circumstances. *See Crankshaw v. City of Elgin*, No. 1:18-CV-75-RP, 2019 WL 3883565, at *10 (W.D. Tex. Jan. 14, 2019) (granting Rule 12(b)(6) motion where, in addition to not identifying a comparator, sex discrimination Plaintiff's complaint alleged she was replaced by another female employee, and employer granted accommodations to another female employee); *Williams v. Health Texas Provider Network*, No. 3:16-CV-391-M-BK, 2017 WL 2608813, at *4 (N.D. Tex. June 1, 2017), *report and recommendation adopted*, No. 3:16-CV-391-M-BK, 2017 WL 2616952 (N.D. Tex. June 15, 2017) (granting Defendant's 12(b)(6) motion where discrimination Plaintiff, in addition to not identifying a comparator, further did "not tie any…instances to harassment that occurred based on his gender" and "did not allege that he was subject to sexist comments, jokes, name-calling, and the like.")

Accordingly, while Plaintiff is required to show that she was treated less favorably than such similarly-situated employees in establishing a *prima facie* case of discrimination—which has "some relevance" at the motion to dismiss stage—the omission of such an employee from her Amended Complaint does not constitute a fatal "pleading failure" as FSS seems to suggest. Mot. To Dismiss 11; *Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017);

In her Amended Complaint, Plaintiff pleads the following relevant factual material supporting her sex discrimination claim:

- "Plaintiff is a transgender woman, and transitioned from her assigned male sex to align with her female gender identity prior to the events described herein." (Pl. Am. Compl. ¶ 9).

- "In September 2017, Plaintiff began working as a General Manager for FSS, a staffing and ground services provider for commercial airlines." (*Id.* at ¶ 10).

- "On February 16, 2018, FSS promoted Plaintiff to Regional Director of Operations." (*Id*. at ¶ 11).

- "In late-2018/early-2019, Plaintiff's subordinates reported several incidents of harassing and derogatory behavior by Frontier's Regional Manager concerning Plaintiff and Plaintiff's gender identity. For instance, one subordinate reported that the Regional Manager unjustifiably derided Plaintiff's job performance and remarked that Plaintiff was a "he-she" and a "waste of space." In a separate incident, a different subordinate reported that the Regional Manager again derided Plaintiff's job performance and arbitrarily outed her as transgender to the subordinate, stating, "You know [Plaintiff] is transgender, right?" (*Id*. at ¶ 15).

- "On February 25, 2019, Plaintiff learned she was being demoted, transferred to a location 500 miles away from her home in Austin, Texas, and placed on a 90-day "probationary period", during which if Plaintiff failed to meet certain undefined "performance standards and expectations", her employment would be terminated." (*Id*. at ¶ 21).

- "Plaintiff's job performance throughout her tenure with Defendants was stellar, and she had no disciplinary history." (*Id*. at ¶ 22).

These nonconclusory facts support a straightforward claim alleging an adverse employment action taken by FSS against Plaintiff which was motivated by discriminatory animus.

Plaintiff pled that she is a transgender woman who, having previously transitioned (*i.e.* had gender reassignment surgery to appear more 'feminine'), quickly rose through FSS's ranks until her transgender status was outed (*i.e.* made publicly known) at FSS by a colleague. Soon thereafter, she was promptly demoted, transferred, placed on probation, and ultimately terminated due to no fault of her own and despite her stellar qualifications and performance. These facts, taken as true, permit a reasonable inference that FSS reacted to the revelation of Plaintiff's transgender status by taking the described adverse employment actions against her.

Accordingly, Plaintiff has pled sufficient factual material to support her sex discrimination claim, and FSS's Motion to Dismiss should be DENIED with respect to this claim.

D.  **PLAINTIFF'S RETALIATION CLAIMS UNDER TITLE VII AND TCHRA.**

Both Title VII and the TCHRA prohibit an employer from retaliating against an employee for opposing unlawful discrimination. 42 U.S.C. § 2000e-3(a); TEX. LAB. CODE § 21.055. To establish a *prima facie* case of retaliation, the "plaintiff bears the initial burden to show: '(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 618–19 (5th Cir. 2020) (*quoting Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).

To satisfy the first element, a Plaintiff's protected activity must, "at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786 (Tex. 2018) (*citing Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 586 (Tex. 2017)). Moreover, the Fifth Circuit has recognized that as to claims of sexual harassment, there is a "gray area between actual violation and perceived violation" in which a reasonable but mistaken belief about the unlawfulness of certain conduct may be held. *EEOC v. Rite-Way Serv., Inc.,* 819 F.3d 235, 242 (5th Cir. 2016).

In her Amended Complaint, Plaintiff pleads the following relevant factual material regarding her retaliation claim:

- "In late-2018/early-2019, Plaintiff's subordinates reported several incidents of harassing and derogatory behavior by Frontier's Regional Manager concerning Plaintiff and Plaintiff's gender identity. For instance, one subordinate reported that the Regional Manager unjustifiably derided Plaintiff's job performance and remarked that Plaintiff was a "he-she" and a "waste of space." In a separate incident, a different subordinate reported that the Regional Manager again derided Plaintiff's job performance and arbitrarily outed her as transgender to the subordinate, stating, "You know [Plaintiff] is transgender, right?"" (Pl. Am. Compl. ¶ 25, July 21, 2020, ECF No. 7).

- "In January 2019, Plaintiff complained to FSS's leadership and Frontier's Human Resources Department about the Regional Manager's derogatory harassment." *Id.* at 16.

- "On February 25, 2019, Plaintiff learned she was being demoted, transferred to a location 500 miles away from her home in Austin, Texas, and placed on a 90-day "probationary period", during which if Plaintiff failed to meet certain undefined "performance standards and expectations", her employment would be terminated. *Id.* at 21.

- Plaintiff's job performance throughout her tenure with Defendants was stellar, and she had no disciplinary history." *Id.* at 22.

- "After Plaintiff refused to accept the unjustified demotion, transfer, and probation, her employment was terminated." *Id.* at 23.

These nonconclusory facts, and the reasonable inferences gathered therefrom, assert plausible and straightforward claims of retaliation under Title VII and TCHRA. First, the Amended Complaint alleges that she alerted FSS's leadership to her belief that she was the target of unlawful discrimination based on the conduct described by Mr. Woodard by submitting a complaint in January 2019. Moreover, even if Plaintiff was ultimately incorrect in her belief that Mr. Woodard's conduct was unlawful, her claims does not therefore become ripe for dismissal; she should nonetheless be permitted to gather evidence to determine whether her reasonable, if mistaken, belief about the unlawfulness of Mr. Woodard's conduct may support her retaliation claim. Moreover, the Amended Complaint allows for a reasonable inference that the subsequent adverse

employment action resulted from her protected activity. Plaintiff specifies that she filed her complaint in January 2020 and was informed of her demotion, transfer, and probation soon thereafter on February 25, 2019.[1] Moreover, Plaintiff's Amended Complaint specifies that she brought her complaint *directly* to FSS's management: not a co-worker or a low-level supervisor without supervisory authority, or an individual who may or may not have communicated this information to the ultimate decisionmakers regarding her employment: but the ultimate decisionmakers themselves.

Accordingly, FSS's argument that the Amended Complaint fails to allege a plausible claim of retaliation is without merit as Plaintiff has pled sufficient factual material in this regard.

C.     P<span>LAINTIFF</span>'<span>S HOSTILE WORK ENVIRONMENT CLAIM UNDER</span> T<span>ITLE</span> VII <span>AND</span> TCHRA

        I.     *Plaintiff exhausted all administrative remedies regarding her hostile work environment claims by timely bringing them before the EEOC.*

"In order to seek judicial relief under Title VII, an employee must first exhaust any administrative remedies." *Crankshaw v. City of Elgin &Thomas Mattis*, No. 1:18-CV-75-RP, 2019 U.S. Dist. LEXIS 183500, at *10 (W.D. Tex. Jan. 14, 2019) (Pitman, J.). "A rule of reason permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

FSS argues that Plaintiff failed to raise her hostile work environment claim in her administrative charge, and therefore, failed to exhaust her administrative remedies for this claim. However, Plaintiff asserted her hostile work environment claim during the administrative process as early as her initial administrative charge before repeatedly asserting it thereafter.

---

[1] Although Plaintiff concedes that the Court is limited in what information it can consider in ruling on FSS's 12(b)(6) motion, Plaintiff would specify that this complaint is dated January 21, 2019—35 days before Plaintiff received news of Defendants' decision.

Plaintiff's charge repeatedly described the severe and pervasive harassment she endured while employed by Defendants, including being called a "he-she" and being outed as transgender by David Woodard to multiple employees. Her charge further described, in detail, her attempts to comply with relevant U.S. Supreme Court precedent concerning hostile work environment claims by taking advantage of preventative or corrective opportunities provided by Frontier and to otherwise avoid harm. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998*); Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

Nonetheless, even if the allegations in Plaintiff's charge were insufficient to bring her hostile work environment claim within the scope of the EEOC investigation, Plaintiff thereafter placed this claim directly and unambiguously within the scope of the investigation by asserting it directly to the EEOC and to both Defendants. In her rebuttal to FSS's EEOC statement of position, attached hereto as Exhibit 1, Plaintiff dedicated an entire section therein toward outlining her hostile work environment claims against Defendants, explicitly using the term "hostile work environment" repeatedly while so doing. *See* Ex. 1, § II. Plaintiff contemporaneously sent a copy of this response to both Defendants' counsel upon filing it with the EEOC. *See* Exhibit 2. Accordingly, Plaintiff's hostile work environment claims not only fell within the scope of the EEOC investigation as it could have reasonably grown out of her administrative charge, but the EEOC investigation *actually did* grow from her administrative charge to encompass these claims.

When the federal investigator dismissed Plaintiff's administrative charge, thereby exhausting her administrative remedies for the allegations contained therein, Plaintiff had already: (1) unambiguously informed the EEOC that her charge contained a hostile work environment claim; (2) provided a detailed description of her hostile work environment to the EEOC based on the facts contained in her charge so as to allow for a complete administrative investigation of that

claim[2]; (3) further unambiguously informed both Defendants that her charge contained a hostile work environment claim, and provided a detailed description thereof based on the facts in her charge, so as to allow Defendants ample opportunity to provide a response. The notion that Plaintiff, notwithstanding these efforts, nonetheless failed to assert these claims during the administrative process simply because her charge did not overtly claim a hostile work environment—which all parties appear to agree was unnecessary—defies logic.

    2.    *Plaintiff's has properly pled her hostile work environment under Title VII and the TCHRA.*

To establish an actionable hostile work environment claim against FSS based on the conduct of David Woodard, whom Plaintiff concedes was not an employee of FSS, Plaintiff must ultimately show: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on [her protected status]; (4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; and (5) [FSS] knew or should have known of the harassment and failed to take prompt remedial action." *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001); *Lauderdale v. Texas Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotation marks omitted); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Gardner v. CLC of Pascagoula*, L.L.C., 915 F.3d 320, 321–22 (5th Cir. 2019) ("Because the ultimate focus of Title VII liability is on the employer's conduct—unless a supervisor is the harasser, a plaintiff needs to show that the employer knew or should have known about the hostile work environment yet allowed it to persist…Customers are one example of third-party harassers.").

---

[2] Plaintiff's rebuttal statement was on file with the EEOC for almost ten (10) months before the agency dismissed her charge against FSS. At no point did the EEOC express any concern whatsoever that the hostile work environment claim detailed therein had not been raised in Plaintiff's administrative charge.

Courts "consider the totality of the circumstances in determining whether an environment is hostile. Relevant factors include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998).

In her Amended Complaint, Plaintiff pled the following relevant factual material regarding her hostile work environment claim:

- "In late-2018/early-2019, Plaintiff's subordinates reported several incidents of harassing and derogatory behavior by Frontier's Regional Manager concerning Plaintiff and Plaintiff's gender identity. For instance, one subordinate reported that the Regional Manager unjustifiably derided Plaintiff's job performance and remarked that Plaintiff was a "he-she" and a "waste of space." In a separate incident, a different subordinate reported that the Regional Manager again derided Plaintiff's job performance and arbitrarily outed her as transgender to the subordinate, stating, "You know [Plaintiff] is transgender, right?"" (Pl. Am. Compl. ¶ 25, July 21, 2020, ECF No. 7).

- "In January 2019, Plaintiff complained to FSS's leadership and Frontier's Human Resources Department about the Regional Manager's derogatory harassment." *Id.* at 16.

- "On February 25, 2019, Plaintiff learned she was being demoted, transferred to a location 500 miles away from her home in Austin, Texas, and placed on a 90-day "probationary period", during which if Plaintiff failed to meet certain undefined "performance standards and expectations", her employment would be terminated.

- "Plaintiff's job performance throughout her tenure with Defendants was stellar, and she had no disciplinary history." *Id.* at 22.

- "After Plaintiff refused to accept the unjustified demotion, transfer, and probation, her employment was terminated." *Id.* at 23.

Although FSS dedicates a significant portion of its Motion to Dismiss arguing that David Woodard is not an employee of FSS, and likewise, it cannot be vicariously liable under Title VII for his conduct, Plaintiff does not presently dispute these points. In contrast, Plaintiff asserts that "Defendants discriminated against Plaintiff in connection with the terms, conditions, and

privileges of her employment by, *inter alia*…perpetuating a severe and pervasive hostile work environment toward Plaintiff because of her transgender status." As this allegation pertains to FSS, Plaintiff anticipates that discovery will further demonstrate its liability for perpetuating said hostile work environment because it: (1) knew about the conduct of Woodard; yet (2) failed to appropriate remedial action. In support of this hostile work environment claim against FSS, Plaintiff's has pled factual material which, taken as true, allows for a reasonable inference that FSS's management had actual knowledge of Woodard's conduct, but opted to demote, transfer, and ultimately terminate Plaintiff rather than take appropriate remedial action.

Finally, Plaintiff has sufficiently pled sufficient factual material evidencing severe or pervasive harassment to support her hostile work environment claim. Specifically, Plaintiff has alleged that David Woodward, on at least two different occasions, disclosed sensitive and *exceedingly* private information about Plaintiff's transgender status to multiple direct subordinates of Plaintiff—whom Plaintiff was expected to supervise and interact with on a daily basis—for no conceivable reason other than to humiliate her and interfere with her ability to supervise them. Plaintiff contends that these facts, taken as true, far exceed the types of "simple teasing" or "offhand comments" which generally are insufficient to support a claim for hostile work environment. *See Faragher* at 787-788.

Accordingly, Plaintiff has pled sufficient factual material regarding her hostile work environment claim, and FSS's Motion to Dismiss with respect to this claim should be DENIED.

## III.
## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny FSS's Motion to Dismiss in its entirety.

Respectfully submitted,

**ROSS • SCALISE LAW GROUP**
1104 San Antonio Street
Austin, Texas 78701
T: (512) 474-7677
F: (512) 474-5306

*/s/ Trenton Lacy*
**Daniel B. Ross**
State Bar No. 00789810
dan@rosslawgroup.com
**Trenton Lacy**
State Bar No. 24106176
trenton@rosslawgroup.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that a true and correct copy of the foregoing instrument was served upon all parties of record to this suit in accordance with the Federal Rules of Civil Procedure on Wednesday, October 21, 2020:

Via e-mail: myers@chaffe.com; mcintire@chaffe.com; bush@chaffe.com;
CHAFFE McCALL, LLP
Sarah Voorhies Myers
Amy L. McIntire
H. Michael Bush

**ATTORNEYS FOR DEFENDANT FLIGHT SERVICES & SYSTEMS, LLC**

Via e-mail: kmiers@littler.com; agray@littler.com;
LITTLER MENDELSON P.C.
Kimberly R. Miers
Andrew Gray

**ATTORNEYS FOR DEFENDANT FRONTIER AIRLINES, INC.**