IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRYNNE SOUKUP, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-648-RP |
| FRONTIER AIRLINES, INC. and FLIGHT SERVICES & SYSTEMS, LLC, | § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court are Defendants Frontier Airlines, Inc. ("Frontier") and Flight Services & Systems, LLC's ("FSS") motions to dismiss Plaintiff Brynne Soukup's ("Soukup") first amended complaint under Federal Rule of Civil Procedure 12(b)(6), (Frontier Mot. Dismiss, Dkt. 10; FSS Mot. Dismiss, Dkt. 19), and all related briefing. Having considered the parties' briefs, the record, and the relevant law, the Court finds that Frontier's motion should be granted and FSS's motion should be granted in part and denied in part.

**I. BACKGROUND**

Soukup, a former FSS employee, brought this action for willful violations of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE §§ 21.051 and 21.055, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII") by Defendants Frontier and FSS (together, "Defendants"). (Am. Compl., Dkt. 7, at 1). Soukup, a transgender woman, alleges that her employment with FSS was constructively terminated after she complained of discrimination and harassment by a Frontier employee. (*See id*).

As a regional director of operations at FSS, Soukup was assigned to work with Frontier, who "was among FSS's largest and most influential clients." (*Id.* at 3). Soukup "worked in close association with, and often at the direction of, Frontier and its employees" and "was expected to

1

conduct business for and on behalf of both Defendants in accordance with their respective policies and procedures." (*Id.*). While FSS hired Soukup and paid her wages, Frontier had the authority to provide "[o]n-the-job corrections and admonishments" and could terminate Soukup's assignment with Frontier. (*Id.*).

Between 2018 and 2019, Soukup experienced "several incidents of harassing and derogatory behavior" by Frontier's regional manager, David Woodward ("Woodward"), which Soukup's subordinates reported. (*Id.*). One subordinate reported that the regional manager called Soukup a "he-she" and a "waste of space" while critiquing her work. (*Id.*). On another occasion, a different subordinate reported that the regional director had outed Soukup as transgender while discussing Soukup's job performance. (*Id.*). In January 2019, Soukup reported the harassment to FSS's leadership and Frontier's Human Resources Department. (*Id.*). In early February 2019, Frontier announced that it had completed an investigation into the complaint but did not identify any remedial actions to address Soukup's complaint. (*Id.* at 4). Later that month, FSS alerted Soukup that she was being demoted, transferred, and placed on a 90-day probationary period despite not having any disciplinary history with FSS. (*Id.*). Soukup's employment was constructively terminated after she refused to accept the new terms of her employment. (*Id.*).

Defendants now move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (Dkts. 10, 19). FSS contends that it cannot be held liable for actions taken by Woodward, the employee who allegedly harassed Soukup, because he is a Frontier employee. (Dkt. 19, at 3). In addition, FSS argues that Soukup has failed to state claims of retaliation or discrimination under Title VII or the TCHRA. (*Id.* at 6–11). Lastly, FSS argues that Soukup has failed to state a hostile work environment claim and has not exhausted her administrative remedies with regard to this claim. (*Id.* at 11–17). In its motion to dismiss, Frontier similarly argues that Soukup failed to exhaust her administrative remedies with respect to her hostile work environment claim and failed to state

the remainder of her claims against Frontier. (*See* Dkt. 10). As a threshold matter, Frontier also contends that Soukup has not sufficiently shown that Frontier was her employer. (*Id.* at 4–7).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Id.* "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'"

*Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Both Defendants argue that Soukup's causes of action must be dismissed pursuant to Rule 12(b)(6). The Court will address each Defendant's motion to dismiss in turn.

#### A. Frontier's Motion to Dismiss

As a threshold matter, Frontier argues that Soukup has failed to establish that Frontier was her employer and thus lacks standing to bring her Title VII or state law claims against Frontier. (Dkt. 10, at 4).[1] Frontier does not dispute that it falls within the definition of "employer" under Title VII. (Dkt. 10, at 4–5) (citing 42 U.S.C. § 2000e(b)). Thus, to determine whether an employment relationship exists between Soukup and Frontier, the Court applies a "hybrid economic realities/common law control test." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). Because the "right to control an employee's conduct is the most important component" of the test, the Court must determine whether the employer had the right to hire and fire, supervise and set the employee's schedule. *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993). The economic realities portion of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.*

Frontier contends that Soukup has not pleaded facts showing that it "exhibited *any* of the relevant indicia of an employment relationship" because although she worked closely with Frontier,

---

[1] "The law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). "Courts analyze Title VII and parallel claims under the Texas Labor Code identically. Because TCHRA is intended to correlate with Title VII, the same analysis is applied for each claim." *Cornett v. United Airlines, Inc.*, No. A-18-CV-698 LY, 2019 WL 453365, at *3 (W.D. Tex. Feb. 5, 2019) (*citing Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x. 295, 297 (5th Cir.), *cert. denied*, 571 U.S. 880 (2013); *Shackleford*, 190 F.3d at 404) (internal quotations omitted).

FSS in fact controlled all aspects of Soukup's employment. (Dkt. 10, at 5). Frontier highlights that FSS hired Soukup, promoted her, and ultimately required her to accept transfer or be terminated. (*Id.*; Am. Compl., Dkt. 7, at 2–4). Frontier relies on *Reith* for the proposition that no employment relationship exists where "individuals [] are not hired by the putative employer, do not receive remuneration for their services from the putative employer, and whose terms and conditions of employment are not dictated by the putative employer." (Dkt. 10, at 7); *Reith v. TXU Corp*, No. 4:05CV33, 2006 WL 887413, at *1 (E.D. Tex. Apr. 4, 2006), report and recommendation adopted sub nom. Reith v. TXU Corp., No. 4:05CV33, 2006 WL 1149206 (E.D. Tex. Apr. 27, 2006). There, the court found no employment relationship existed where defendant was not able to fire plaintiff, but plaintiff worked on defendant's premises, defendant "largely supervised and trained" plaintiff and could terminate his assignment with defendant. *Reith*, 2006 WL 887413, at *4.

In response, Soukup reiterates the allegations in her amended complaint, namely that Soukup received training from Frontier, conducted business on behalf of Frontier, worked closely with and "often at the direction of" Fronter employees, and received feedback from Frontier. (Am. Compl., Dkt. 7, at 2–4). In addition, Frontier had the right to terminate Soukup's assignment with Frontier and was "among FSS's largest and most influential clients." (*See id.*). Soukup also argues that she "has no burden to prove that Frontier" was her joint employer, but in any event has pleaded facts "sufficient to raise a plausible claim that Frontier is liable for violations of the Texas Labor Code as her joint employer." (Resp., Dkt. 12, at 3–4). Ultimately, Soukup maintains that "Frontier employees have the right to control FSS employees." (*Id.* at 3).

However, Frontier did not in fact control Soukup, and the economic realities of her relationship with Frontier did not suggest an employment relationship. While Soukup is correct that she need not prove the existence of an employment relationship at the motion to dismiss phase, she nonetheless must plead sufficient facts to support the existence of such a relationship. *Diggs v. Harris*

5

*Hosp.--Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) ("a Title VII claim must necessarily involve an employment relationship."); *Bender v. Suburban Hosp.*, 998 F. Supp. 631, 634 (D. Md.), *aff'd sub nom. Bender v. Suburban Hosp., Inc.*, 159 F.3d 186 (4th Cir. 1998) ("It is axiomatic that a plaintiff must allege the existence of an employment relationship in order to state a Title VII claim."). Soukup has not pled "sufficient factual matter, accepted as true" that could establish that Frontier acted as her employer. (Dkt. 12, at 30) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the determination of whether an employment relationship exists will depend on the facts of each case, here none of the facts Soukup has alleged support the finding of such a relationship. *See McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir.1972) (existence of employment relationship under Title VII "must turn on the facts of each case."). Soukup's allegations that she worked on Frontier premises, worked closely with and was supervised by Frontier employees, and that Frontier had the right to terminate her assignment with Frontier do not support the existence of an employment relationship. *See Reith*, 2006 WL 887413, at *4 (no employment relationship where plaintiff worked on defendant premises, was largely trained by defendant, and defendant could end plaintiff's assignment but not terminate his employment). Similarly, Soukup's allegation that she conducted business on behalf of Frontier in accordance with their policies and procedures is not sufficient to establish an employment relationship. *Deal*, 5 F.3d at 119 (prevision of employee handbook with policies for plaintiff to follow would "not be sufficient to establish an employment relationship.").

While Frontier had some control over setting Soukup's schedule and supervising her during her assignment, the power to make ultimate employment decisions regarding Soukup laid with FSS. Even while Soukup was working for Frontier, FSS was solely responsible for hiring, promoting, firing or transferring Soukup. (Dkt. 7, at 3–4). Indeed, when Soukup complained of harassment at Frontier, it was FSS that demoted, transferred, and placed Soukup on a probationary period. (*Id.* at

6

4). Soukup was also dependent on FSS as a matter of economic reality because it paid her salary, withheld taxes from her paycheck, provided her benefits, and established the terms and conditions of her employment. (*Id.* at 3). Therefore, Soukup had an employment relationship with FSS, not Frontier, and her claims against Frontier must be dismissed for failure to state a claim against Frontier.

### B.  FSS's Motion to Dismiss

FSS moves to dismiss Soukup's claims by arguing that it cannot be held liable for the actions of a Frontier employee under Title VII or Texas law and that has Soukup failed to allege sufficient facts to support her retaliation and discrimination claims. (Dkt. 19, at 3–11).  In addition, FSS moves to dismiss Soukup's hostile work environment claim because Soukup has failed to exhaust her administrative remedies or sufficiently state such a claim. (*Id.* at 11–18). Soukup responds that FSS's motion should be denied in its entirety because she has plead "sufficient factual matter" to support all of her claims. (Resp., Dkt. 22, at 1). The Court will address each of FSS's arguments in turn.

First, FSS contends that it cannot be held liable for Woodward's discriminatory and harassing behavior towards Soukup because he was not an FSS employee. (Dkt. 19, at 3). Soukup did not respond to this argument. However, the Court notes that FSS's argument rests on the assumption that employers may not be liable for discrimination at the hands of a non-employee. Not so. FSS's motion cites to no precedent requiring such a relationship to establish a claim under Title VII or the TCHRA, and in fact the Fifth Circuit has stated that "nonemployees can be the source of the harassment" for the purposes of claims brought under Title VII. *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019), as revised (Feb. 7, 2019) ("Claims of sexual harassment typically involve the behavior of fellow employees. But not always."); *see also Frank v. Harris Cnty.*, 118 F. App'x 799, 803 (5th Cir. 2004) ("This Circuit has recognized that employers may be liable under Title VII for the conduct of non-employees in the workplace when the employer knows of

the harassment but fails to act."). As such, the Court rejects FSS's argument that Soukup's claims must be dismissed because Woodward is or was a Frontier employee.

Next, FSS argues that Soukup's retaliation claim must be dismissed because she has failed to show protected activity or causation, as required to state a claim of retaliation under Title VII or the TCHRA. (Dkt. 19, at 6). Soukup responds that the nonconclusory facts found in her complaint "assert plausible and straightforward claims of retaliation under Title VII and TCHRA." (Dkt. 22, at 6). To state a claim for retaliation,[2] Soukup must meet the initial burden of showing that: "(1) [she] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 618 (5th Cir. 2020). If an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff may have met her burden to establish a prima facie case of retaliation. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

Here, Soukup has pled sufficient facts to meet her initial burden of stating a claim of retaliation against FSS under Title VII and the TCHRA. First, Soukup sufficiently pled that she engaged in protected activity when she "complained to FSS's leadership and Frontier's Human Resources Department about the Regional Manager's derogatory harassment." (*Id.* at 3); *Badgerow*, 974 F.3d at 619 ("[A] plaintiff engages in protected activity when she complains of an employment practice that she 'reasonably believes' violated Title VII."). FSS once again argues that "[b]ecause Woodward is not alleged to be an employee of FSS, his conduct, however heinous, cannot constitute an unlawful employment practice by FSS." (Dkt. 19, at 7). However, Soukup's retaliation claim does not seek to hold FSS liable for Woodward's actions, but rather for the adverse

---

[2] Soukup brings retaliation claims under Title VII and the TCHRA. The Court notes that these statutes have identical rules for retaliation claims. *Fabela v. Corpus Christi Indep. Sch. Dist.*, 2020 WL 2576175, at *5 (S.D. Tex. May 21, 2020).

employment actions FSS took against Soukup after she reported Woodward's harassment. (Am. Compl., Dkt. 7, at 6).

Second, Soukup sufficiently pled causation because of the temporal proximity between her complaint and the adverse employment decision taken by FSS, coupled with her lack of disciplinary history while at FSS. While FSS cites to *Barkley* for the proposition that a four month period is insufficient to establish temporary proximity in support of causation, here, FSS's announcement that Soukup would be demoted, transferred and placed on a probationary period came a mere 35 days after she reported the allegedly unlawful behavior by Woodward. (Dkt. 22, at 7); *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x. 254 (5th Cir. 2011); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) ("[A] six-and-a-half-week timeframe is sufficiently close" to serve as evidence of causality to establish prima facie case of retaliation); *Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 913 (5th Cir. 2010) (concluding that one month between protected activity and adverse employment action was sufficiently close).

FSS further argues that "there is absolutely no fact pleaded to show that the person at FSS to whom she complained at some unstated time in January, 2019, was the same person who informed her of her transfer," yet cites to no case law, and the Court is unaware of any such precedent, stating that a plaintiff must plead that the person to whom she complained and the person who alerted her of the adverse employment decision be one and the same. (Dkt. 19, at 8). The Court finds that the 35-day gap between Soukup's report of the discrimination and her demotion, along with Soukup's lack of disciplinary history, demonstrate causation in support of her retaliation claim. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (employee's past disciplinary record a factor in determining causation). Thus, FSS's motion to dismiss Soukup's retaliation claim is denied.

Next, FSS contends that Soukup has failed to properly plead her discrimination claim because she has not alleged facts sufficient to show that FSS took an adverse employment action "*because* of her gender identity." (Dkt. 19, at 10). Specifically, FSS argues that Soukup failed to allege that "she was treated less favorably than other similarly situated employees outside her class." (*Id.*). Soukup responds that she has pled sufficient factual material to show that she "quickly rose though FSS's ranks until her transgender status was outed." (Dkt. 22, at 5). In her complaint, Soukup alleged that FSS "discriminated against Plaintiff in connection with the terms, conditions, and privileges of her employment by, inter alia, terminating or causing the termination of Plaintiff's employment because of her transgender status." (Dkt. 7, at 5, 7).

To establish a discrimination claim under Title VII,[3] a plaintiff must establish that she (1) belongs to a protected class; (2) is qualified for the position at issue; (3) was subject to an adverse employment action; and (4) was treated less favorably than other similarly situated employees outside of [her] class. *Thompson v. City of Waco*, 764 F.3d 500, 507 (5th Cir. 2014). There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "because of her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). At the motion to dismiss phase, a court "inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis." (*Id.*). While a plaintiff need not make out a prima facie case of discrimination to survive a 12(b)(6) motion to dismiss, the prima facie standard "nonetheless has some relevance at the motion-to-dismiss stage." *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017).

---

[3] The law governing discrimination claims under the TCHRA and Title VII is "identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). As such, the Court analyzes these claims together.

Here, Soukup has properly pled the two ultimate elements of her discrimination claim. First, Soukup pled facts showing that she experienced an adverse employment action when FSS "demoted, transferred . . . and placed [Soukup] on a 90-day 'probationary period.'" (Dkt. 7, at 4); *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir.2000) ("Adverse employment actions" include "demotions . . . and reprimands.") (internal quotation marks and citation omitted). Second, Soukup properly pled that she was demoted, transferred, and placed on probationary leave because she complained of discrimination and harassment based on her gender identity. (Dkt. 7, at 5, 7). As described above, the temporal proximity between Soukup's reporting of the discrimination and the adverse employment action, along with Soukup's lack of disciplinary record, give rise to a "reasonable inference" that FSS took such adverse employment actions because Soukup complained of harassment and discrimination based on her gender identity. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 471 (5th Cir. 2016).

FSS cites to *Chhim* for the proposition that Soukup's failure to identify a comparator or similarly situated employee means she has "failed to plead sufficient facts in support of a discrimination claim." (Dkt. 19, at 10); *Chhim*, 836 F.3d 467. Yet in *Chhim*, the Court dismissed plaintiff's discrimination claim where it "turn[ed] on the assertion that the University discriminatorily hired a less qualified, similarly situated applicant over [him]." *Chhim*, 836 F.3d at 471. Here, in contrast, Soukup's complaint turns on the adverse employment actions FSS took against Soukup after she complained of experiencing discrimination and harassment because of her gender identity, not FSS's hiring of other, less qualified applicants. (*See* Dkt. 7).

The other cases cited by FSS are also distinguishable from this case. In *Crankshaw*, for example, plaintiff failed to allege a sex discrimination claim where she pled that she was replaced by a person who was a member of her protected class, negating any inference that plaintiff "was treated less favorably than other similarly situated employees outside her protected class." *Crankshaw v. City*

*of Elgin*, 2019 WL 3883565, at *10 (W.D. Tex. Jan. 14, 2019). While discovery may reveal that Soukup was replaced by another transgender employee or that other transgender employees have not faced similar sanctions for reporting discrimination, at this stage the facts alleged in Soukup's complaint suffice to give rise to the inference that other similarly situated FSS employees were not subject to transfer, demotion, and probation based on having reported gender-based discrimination.

FSS also cites to *Williams*, where the court dismissed a gender discrimination claim because plaintiff did not tie "his poor treatment by his colleagues" to any "harassment that occurred based on his gender." *Williams v. Health Tex. Provider Network*, 2017 WL 2608813, at *4 (N.D. Tex. June 1, 2017), *report and recommendation adopted*, 2017 WL 2616952 (N.D. Tex. June 15, 2017). Here, in contrast, Woodward's alleged discrimination against Soukup was clearly tied to her status as a transgender woman, and FSS's decision to transfer, demote, and place Soukup on probation occurred little over a month after she reported the harassing behavior, thus giving rise to the inference that FSS's adverse employment actions were tied to Soukup's gender identity and decision to report suspected Title VII violations. Soukup has thus pled facts that give rise to "a reasonable inference of plausibility for the ultimate elements of her claim." *See Jenkins*, 713 F. App'x at 245 (citing *Chhim*, 836 F.3d at 470–71).

Lastly, FSS argues that Soukup's hostile work environment claim must be dismissed because she failed to exhaust her administrative remedies, and, in any event, failed to plead sufficient facts to support such a claim. (Dkt. 19, at 11–17). In response, Soukup contends that she asserted her hostile work environment claim "as early as during her initial administrative charge," and in any event, Soukup's hostile work environment claim "could have reasonably grown out of her administrative charge . . . [and] actually did grow out of her administrative charge." (Dkt. 22, at 7–8). To begin with, there is no reference or allegation of a hostile work environment in Soukup's EEOC charge. (*See* Dkt. 19-1). Soukup contends that she "dedicated an entire section" of her rebuttal to FFS's EEOC

statement of position to "outlining her hostile work environment claims." (Dkt. 22, at 8; *see also* Rebuttal, Dkt. 22-1). However, as FSS correctly points out, Soukup's rebuttal "does not outline a hostile work environment claim, nor does it include any discussion of the elements of such a claim," bur rather references "hostile work environment" within quoted language in a paragraph regarding FSS's liability for actions of a non-employee. (Reply, Dkt. 26, at 6; Dkt. 22-1, at 2).

Soukup may nonetheless show that she has exhausted her administrative remedies if she can show that her hostile work environment claim can "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 788–789 (5th Cir. 2006) ("[T]he scope of an EEOC complaint should be construed liberally."). To determine whether a hostile work environment claim may grow out of Soukup's EEOC charge, the Court engages in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge" and looks "slightly beyond its four corners, to its substance rather than its label." *Id.* at 789. Here, Soukup's EEOC charge recounts the same discrete instances of discriminatory behavior by Woodward that she describes in her complaint. (Dkt. 7, at 3–4; Dkt. 22-1, at 1).

The Fifth Circuit has held that the existence of a hostile work environment cannot "reasonably be expected to grow out of" an EEOC charge alleging discrete acts of discrimination. *Hill v. Dep't of Veterans Affairs*, No. 08-60532, 2009 WL 348767, at *4 (5th Cir. Feb. 12, 2009); *see also Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409 (5th Cir. 2007) ("hostile environment and unequal pay claims could not be expected to grow out of" EEOC discrimination charge where plaintiff "charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment."). Soukup's hostile work environment claim cannot be reasonably expected to grow out of the allegations of discrimination she presented in her EEOC charge or her later reference to "hostile work environment" within quoted language in her rebuttal

13

to FFS's EEOC statement of position. As such, the Court must dismiss Soukup's hostile work environment claim for failure to exhaust her administrative remedies.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Frontier's motion to dismiss, (Dkt. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that Soukup's claims against Frontier are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FINALLY ORDERED** that FSS's motion to dismiss, (Dkt. 19), is **GRANTED IN PART** and **DENIED IN PART**. Specifically, FSS's motion to dismiss is granted with regard to Soukup's hostile work environment claim, which is dismissed without prejudice. FSS's motion is denied in all other respects.

**SIGNED** on February 9, 2021.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE